IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIRA FLORECE, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JOSE PEPPER'S RESTAURANTS, LLC, et al.,<br><br>Defendants. | Case No. 20-2339-TC-ADM |

## MEMORANDUM AND ORDER

This matter comes before the court on plaintiff Kira Florece's ("Florece") Motion to Compel. (ECF 31.) By way of this motion, Florece asks the court to compel defendants Jose Pepper's Restaurants, LLC and Edward J. Gieselman ("Gieselman") to respond to interrogatories seeking information about servers and lead managers that worked at all thirteen Jose Pepper's restaurants for a three-year period. For the reasons explained below, the court grants this aspect of Florece's motion because it bears on the issue of whether the putative class of plaintiff servers were similarly situated with respect to the pay practices at issue, and thus whether conditional certification of this putative Fair Labor Standards Act ("FLSA") collective action is appropriate.

The remaining aspect of Florece's motion to compel seeks information about complaints by Jose Pepper's nonexempt hourly employees for failing to pay for time worked over a five-year period and copies of those complaints. Although information responsive to these discovery requests might be relevant to the issues in this case, it is equally possible that any responsive information (other than plaintiff's own FLSA complaint, which she already knows about) is not relevant. Simply put, these discovery requests are not tailored to the issues in this case at the pre-certification stage. They are not directed to complaints about the alleged pay practices at issue, or

to the putative class of servers, or to the three-year statute of limitations. Accordingly, this aspect of Florece's motion is denied without prejudice at this procedural juncture.

## I.     BACKGROUND

Florece's complaint alleges that defendant Jose Pepper's Restaurants, LLC owns and operates nine Jose Pepper's restaurants in Kansas, and that defendant Gieselman owns and operates four Jose Pepper's restaurants in Missouri. Florece alleges that she worked as a server at the Jose Pepper's restaurant in Belton, Missouri, from April 2019 through February 2020. She contends that she and similarly situated employees across the thirteen Jose Pepper's locations were not properly paid minimum wage and overtime compensation as required by the FLSA and, as to Missouri employees, the Missouri Minimum Wage Law ("MMWL"). Specifically, Florece contends that she and similarly situated employees were: (1) prohibited from clocking in until they began serving customers, even though they were required to be present and working prior to clocking in; (2) allowed to work overtime if they did not clock in; (3) denied overtime compensation after defendants removed reported overtime hours from the timekeeping system; and (4) asked to report overtime hours worked as regular hours worked under another employee's name. (ECF 1 ¶ 18.) Florece alleges that she personally refused to work overtime if she was not clocked in or to report overtime hours as regular hours under another employee's name. (*Id.*)

On July 7, 2020, Florece filed this lawsuit as a putative collective and class action in which she asserts claims for violations of the FLSA and MMWL. Defendants filed a motion to dismiss Florece's complaint, which is currently pending. (ECF 9.) In that motion, defendants argue that Florece does not have standing to bring claims based on the alleged policies with which she refused to comply and that she cannot represent employees who were victims of those policies. Defendants also argue that Florece's complaint fails to allege with any particularity that she or anyone else

2

worked overtime. Finally, with respect to Florece's MMWL claims, defendants argue that the court should either decline to exercise jurisdiction over those claims or find that they are preempted by the FLSA.

On September 22, the court entered a scheduling order bifurcating discovery into two phases. This case is currently in the first phase, which involves discovery relating to whether conditional certification of an FLSA collective action is appropriate. (ECF 15 ¶ 2(b).)

Florece served discovery on defendants seeking the name, address, phone number, and dates of employment for all servers who worked at defendants' thirteen restaurant locations in the three years before Florece filed her complaint (Interrogatory No. 7) and the same information for lead managers (Interrogatory No. 8). Florece also seeks the name and job title of any nonexempt hourly employee who made complaints to management alleging failure to pay for time worked in the last five years, along with the date of the complaint and the person who received it (Interrogatory No. 4). Florece also seeks copies of any identified complaints.[1] Defendants object to providing this discovery primarily on relevance grounds, and further object to the complaint-related requests as overly broad and not properly limited in temporal scope.

---

[1] The parties characterize Request for Production ("RFP") 6 as seeking copies of employee complaints regarding failure to pay for time worked. (*See* ECF 31, at 2; ECF 33, at 4-5.) Florece did not attach RFP 6 to her motion, but she submitted it to the court informally before the discovery conference on December 22, 2020. (ECF 29.) RFP 6 seeks documents reflecting putative collective action members who were counseled or disciplined for failing to be present at work before starting a shift. Neither party's briefing addresses this particular category of documents. Instead, the parties discuss the documents at issue in this RFP as "employee complaints" synonymously with the scope of Interrogatory No. 4. Given the parties' characterization of the issue presented, the court will likewise consider the scope of this RFP to be synonymous with Interrogatory No. 4.

3

## II.  LEGAL STANDARD

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). In other words, considerations of both relevance and proportionality now expressly govern the scope of discovery. FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment. Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *see Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (applying *Oppenheimer* after the 2015 amendment); *see also Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (analyzing the 2015 amendment and concluding that it did not change the scope of discovery but clarified it, and therefore *Oppenheimer* still applies).

When a responding party fails to make a disclosure or permit discovery, the discovering party may file a motion to compel. FED. R. CIV. P. 37(a). The party seeking discovery bears the initial burden to establish relevance, but it does not bear the burden to address all proportionality considerations. *See Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360 (D.N.M. 2018) (discussing the effect of the 2015 amendment on the party seeking discovery); *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003) (stating the moving party bears the initial burden to demonstrate relevance); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case."); FED. R. CIV. P. 26(b)(1) advisory committee's note to the 2015 amendment (noting that the amendment "does not place on the party seeking discovery the burden of

4

addressing all proportionality considerations" and that "the parties' responsibilities [on a discovery motion] would remain the same as they have been").

Relevance is often apparent on the face of the request. *See Johnson v. Kraft Foods N. Am., Inc.*, 238 F.R.D. 648, 652–53 (D. Kan. 2006). When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections. *See Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014) (holding the party resisting discovery bears the burden to show why a discovery request is improper); *Martin K. Eby Const. Co. v. OneBeacon Ins. Co.*, No. 08-1250-MLB-KGG, 2012 WL 1080801, at *3 (D. Kan. Mar. 29, 2012) ("Once this low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request."). The party resisting discovery does not carry this burden by asserting "conclusory or boilerplate objections that discovery requests are irrelevant, immaterial, unduly burdensome, or overly broad." *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004). Rather, an objecting party "must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable." *Id.* at 670-71.

## III. ANALYSIS

The FLSA allows similarly situated employees to opt into a collective action to recover unpaid minimum wages or overtime, in addition to liquidated damages. 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach to determine whether plaintiffs in a proposed FLSA collective action are similarly situated. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Courts first make an initial determination that plaintiffs are similarly situated based on "nothing more than substantial allegations that the putative class members were

together the victims of a single decision, policy, or plan." *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1261 (D. Kan. 2015) (quoting *Thiessen*, 267 F.3d at 1102). "That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members" so that they may choose to opt in. *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012). The standard for conditional certification is lenient and "typically results in certification." *Id.* After discovery closes, courts apply a stricter standard to determine whether plaintiffs are similarly situated, examining factors including "(1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) [and] fairness and procedural considerations." *Thiessen*, 267 F.3d at 1103 (quotation omitted).

At the pre-certification stage, discovery should generally pertain to whether conditional certification is appropriate. *See Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 634 (D. Kan. 2012) (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004)); *see also* ECF 15 ¶ 2(b) (bifurcating discovery into two phases, where the first phase is "discovery relating to whether conditional certification of the FLSA collective action is appropriate"). More specifically, pre-certification discovery should focus on whether putative collective action members were subject to the same decision, policy, or plan. Merits discovery, on the other hand, "pertains to the strengths or weaknesses of the claims or defenses and whether they are likely to succeed." *Allen*, 283 F.R.D. at 634 (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004)). The parties' discovery disputes here primarily relate to whether the discovery Florece seeks is relevant to conditional certification.

### A.     Florece Is Entitled to Discovery on the Putative Opt-In Plaintiffs.

Florece first asks the court to compel defendants to answer Interrogatory No. 7. It seeks the names, contact information, and dates of employment for all servers who worked at thirteen Jose Pepper's restaurants in the three years before Florece filed this lawsuit. (ECF 31-1, at 3.) Florece's complaint alleges that these servers were subject to the same policies and practices that denied them minimum wage and overtime pay. (ECF 1 ¶ 18.)

#### 1.     Some Information on Putative Opt-In Plaintiffs Is Relevant at the Pre-Certification Stage.

Florece contends that the information sought in this interrogatory would assist her in obtaining statements from putative class members who were subject to the same alleged conduct, thereby allowing her to show that those class members are similarly situated and that conditional certification is appropriate. (*See* ECF 31, at 3-4.) Florece points out that other judges in this district have compelled defendants to produce similar information during the pre-certification stage, "particularly when the burden imposed on the responding party is minimal or non-existent." *Allen*, 283 F.R.D. at 635; *see also In re Bank of Am. Wage & Hour Employment Practices Litig.*, 275 F.R.D. 534, 544 (D. Kan. 2011); *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 672 (D. Kan. 2003). These cases recognize that putative opt-in plaintiffs are likely to have information on the pay decision, policy, or plan at issue, and information relating to them is relevant to determining the contours of the proposed collective action and whether individuals are similarly situated. *See Allen*, 283 F.R.D. at 635-36 (overruling relevance objections because "discovery may be relevant for defining the proposed class or determining whether the named plaintiffs are similarly situated to members of the proposed class"); *Bank of Am.*, 275 F.R.D. at 539 (overruling relevance objection where members of the putative collective action "would possess information about the extent of the alleged policy or plan"); *Cady v. R & B Servs. - Wichita, LLC*, No. 13-1331-

7

KHV, 2014 WL 1309089, at *3 (D. Kan. Apr. 1, 2014) (overruling relevance objections and recognizing that judges in the district "have generally agreed to allow the identification of class members by name, contact information, and location where they worked").

Although not all federal courts have allowed discovery related to putative collective action members prior to certification,[2] a number of courts outside of this district have also found this discovery appropriate. *See Youngblood v. Family Dollar Stores, Inc.*, No. 09 CIV. 3176 RMB FM, 2011 WL 1742109, at *3 (S.D.N.Y. Jan. 5, 2011) (collecting cases); *see also Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 9662030, at *5 (D. Colo. Feb. 2, 2018) (agreeing with "the approach taken by [this court's] sister courts in Kansas, which have routinely permitted pre-certification discovery" relating to putative opt-in plaintiffs). "Pre-certification discovery of potential class lists is favored by most cases considering the question, within the contexts of Rule 23, FLSA, or both." *Stebbins v. S&P Oyster Co.*, No. 3:16CV00992 (AWT), 2017 WL 1246334, at *3 (D. Conn. Apr. 3, 2017) (quotation omitted). "Pre-certification discovery of employee contact information will either enable [a plaintiff] to make a fuller showing at the conditional certification stage, or reveal that the collective action is not suitable for certification." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, No. 09 CIV. 1148 (LBS), 2010 WL 2362981, at *2 (S.D.N.Y. June 14, 2010). Early access to this information may also allow a plaintiff to move for conditional certification earlier, thereby allowing potential plaintiffs to opt in earlier. *Id.* The FLSA's "broad remedial goal . . . should be enforced to the full extent of its terms," and encouraging early certification furthers that goal "because the FLSA's limitations

---

[2] *See, e.g.*, *Pontones v. San Jose Rest. Inc.*, No. 5:18-CV-219-D, 2019 WL 1548897, at *3 (E.D.N.C. Apr. 9, 2019) (finding the names and contact information of putative opt-in plaintiffs were not relevant to the plaintiff's certification motion).

Case 2:20-cv-02339-TC-ADM   Document 36   Filed 02/02/21   Page 9 of 17

period continues to run until the potential class member opts in, giving rise to a need to identify and provide notice to potential class members promptly." *Id.* (quotation omitted).

The reasoning in the above-cited case law persuades the court that Florece has met her threshold burden to show that the information she seeks is relevant. Individuals who worked as servers at Jose Pepper's restaurants would likely have information about the pay policies and practices alleged in the complaint and whether they were also subject to those policies and practices. Servers' names, contact information, and employment locations would potentially assist Florece in establishing the contours of the proposed collective action and whether Florece and other servers are similarly situated. Accordingly, the burden shifts to defendants to support their objections.

**2.     Defendants' Reliance on *In re Williams-Sonoma, Inc.* is Misplaced.**

Defendants argue this interrogatory seeks information that is irrelevant to conditional certification and "is a fishing expedition undertaken to rectify the deficiencies in Plaintiff's Complaint, and find an appropriate class representative." (ECF 33, at 1.) In support, defendants rely on *In re Williams-Sonoma, Inc.*, 947 F.3d 535 (9th Cir. 2020), ostensibly as support for their contention that putative collection action members' names are not within the scope of discovery at the pre-certification stage. In *Williams-Sonoma*, the Kentucky plaintiff filed a class action in California seeking damages under California consumer protection law after Williams-Sonoma allegedly misrepresented the thread count of bedding he purchased. *Id.* at 537-38. After the district court determined that Kentucky law governed the plaintiff's claims and prohibited him from bringing a class action, the plaintiff sought discovery from Williams-Sonoma for the sole purpose of identifying a California purchaser who could serve as a new class representative. *Id.* at 538. When Williams-Sonoma objected, the district court ordered it to produce a list of all California customers who purchased the bedding at issue over a period of years. *Id.* Williams-Sonoma then

9

sought a writ of mandamus from the Ninth Circuit vacating the district court's discovery order. The Ninth Circuit granted the writ, finding "clear error in the district court's decision" based on the Supreme Court's reasoning in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978). In *Oppenheimer*, the plaintiffs sought class members' names and addresses in discovery solely for the purpose of enabling them to send out a class notice. *Id.* at 353. The Supreme Court found that the request did not fit into Rule 26(b)(1)'s concept of relevancy because the information was not sought "for any bearing that it might have on issues in the case." *Id.* at 352. After examining *Oppenheimer*, the Ninth Circuit concluded that "using discovery to find a client to be the named plaintiff before a class action is certified is not within the scope of Rule 26(b)(1)." *Williams-Sonoma*, 947 F.3d at 540.

*Williams-Sonoma* is not binding on this court, and defendants' attempts to analogize it to the facts of this case are unpersuasive. The discovery at issue in *Williams-Sonoma* was served for the sole purpose of identifying a new class representative because the Kentucky plaintiff could no longer serve in that capacity. *Id.* at 537 ("The purpose of the discovery was to enable opposing counsel to find a lead class plaintiff to pursue a class action against Williams-Sonoma under California law."). In contrast, Florece seeks discovery that bears on the FLSA conditional certification issue of whether the putative class members (servers) were together the victims of a single decision, policy, or plan. Defendants' challenge to Florece's standing and fitness as a class representative is purely hypothetical at this point. The district judge has not decided defendants' motion to dismiss and, even in the pending motion to dismiss, defendants have only challenged Florece's standing and fitness as a class representative with respect to two of the four alleged pay practices at issue in the complaint. Thus, *Williams-Sonoma* does not persuade the court that the information Florece seeks in Interrogatory No. 7 is irrelevant to conditional certification.

10

### 3. The Court Will Not Limit Discovery to the Belton Restaurant.

As a backup, defendants argue that Interrogatory No. 7 should be limited to servers at the Belton Jose Pepper's location where Florece worked. (*See* ECF 33, at 3-4.) Defendants contend that Florece has made only conclusory allegations that the pay policies and practices at issue applied across all thirteen Jose Pepper's restaurants. Defendants point out that Florece worked only at the Belton location under one manager for less than a year, and her Rule 26 disclosures only identified individuals who worked at that location. (*Id.* at 3.) No other servers from the Belton location or any other Jose Pepper's location have opted into the case; Florece remains the sole plaintiff in the approximately six months the lawsuit has been pending. Defendants rely on *Griffin v. Home Depot USA, Inc*., No. 11-2366-RDR, 2013 WL 1304378 (D. Kan. Mar. 28, 2013), to argue that courts have limited discovery in similar situations, *i.e.* where "plaintiffs' claims only included conclusory allegations of a pattern or practice, but did not indicate a company-wide policy or plan issued by defendant." (ECF 33, at 3.) The court is unpersuaded by this argument or by defendants' reliance on *Griffin* in the context of this case.

*Griffin* involved a collective action that centered on allegations of "pattern and practice" age discrimination across two thousand Home Depot stores nationwide. *Griffin*, 2013 WL 1304378, at *5. The five plaintiffs' claims arose out of allegedly unlawful firings at four stores in Kansas and New York, and they sought information on employment positions at all 2,000 stores over an eight-year period. *Id.* at *4-5. The pleadings suggested that "the reasons given for Plaintiffs' terminations were not the same and were highly individualized" and that employment decisions "were made at the local store level where each worked." *Id.* at *5. Beyond conclusory allegations of a nationwide pattern and practice in the complaint, the court found little to suggest that the decisions affecting the plaintiffs were based on a company-wide plan or policy. *Id.* The

11

court therefore limited the scope of discovery to the stores where the plaintiffs worked and found nationwide discovery irrelevant and overly broad. *Id.*

Here, Florece's allegations are based on her experience working only at the Belton restaurant and, to be fair, are quite conclusory in general. But nothing in the complaint supports defendants' argument that the particular pay policies and practices at issue were individualized, were isolated to the Belton Jose Pepper's restaurant, or varied between restaurants at all. To the contrary, Florece alleges that one person—defendant Geiselman—"determined rates and methods of pay" for all servers and was responsible for "ensur[ing] compliance with the FLSA." (ECF 1 ¶ 11.) Florece further alleges that she and similarly situated employees were "covered by the same human resources policies and pay policies" and that payroll for the thirteen Jose Pepper's locations was "processed through the same payroll company." (*Id.* ¶ 10.)

In view of these allegations, the court is not persuaded that Florece should be limited to discovery regarding the Belton location only. Other courts in this district have previously allowed pre-certification discovery seeking information on putative opt-in plaintiffs who were employed at locations other than those where the representative plaintiffs worked. *See, e.g.*, *Bank of Am.*, 275 F.R.D. at 539; *Hammond*, 216 F.R.D. at 672 (declining to limit discovery to the same department or facility where the plaintiffs were employed and noting that collective actions "require a broader scope of discovery in order to identify those employees who may be similarly situated"); *Cady*, 2014 WL 1309089, at *3 (ordering defendants to produce information on putative opt-in plaintiffs employed at five locations). Indeed, the court in *Bank of America* rejected an argument similar to the one advanced by defendants here—specifically, that the discovery sought was objectionable on relevance grounds because the plaintiffs had "not made any showing of any alleged violations occurring at locations other than those where the named and opt-in Plaintiffs

12

worked." 275 F.R.D. at 539. The court overruled the relevance objection, reasoning that a party is generally "not required to come forward with evidence in support of its claims before the Court will allow discovery of those claims." *Id.* This court agrees. Florece seeks information on servers employed at all thirteen Jose Pepper's restaurants to determine whether defendants applied the same allegedly problematic pay policies and practices across the board.

The discovery Florece seeks in Interrogatory No. 7 is relevant to the central issue at the pre-certification stage—namely, whether the pay policies and practices at issue in the complaint applied to servers working at all Jose Pepper's restaurants. Defendants have not supported their relevance objection, nor do they rely on any proportionality objections that would justify limiting or denying this discovery. *Cf. Allen*, 283 F.R.D. at 635 ("This district has previously allowed disclosure of this type of information before certification, particularly when the burden imposed on the responding party is minimal or non-existent."). The court therefore grants this aspect of Florece's motion to compel.

### B. Florece Is Entitled to Discovery on Lead Managers.

In Interrogatory No. 8, Florece seeks the names, contact information, and dates of employment for anyone holding a lead manager title at any of the thirteen Jose Pepper's locations in the three years prior to Florece filing her complaint. Florece explains that testimony from managers "could easily support the Plaintiff's allegations regarding denial of overtime pay from off-the-clock work." (ECF 31, at 4.) The court finds that Florece has met her low burden of initially establishing relevance. Defendants now bear the burden to support their objections.

Defendants state that they have provided Florece with information about her manager, but they object to providing information on managers at other locations with whom Florece did not interact. Defendants argue this information is irrelevant and, further, that the discovery Florece

seeks is directed to the merits of her claims rather than conditional certification. The court disagrees. Lead managers are likely to have information on defendants' pay policies and practices for servers, which bears on whether the putative opt-in plaintiffs were victims of the same decision, policy, or plan. Indeed, managers are likely to be the individuals who implemented pay policies and plans at the restaurant level. *See, e.g.*, *Robinson v. Food Serv. of Belton, Inc.*, 415 F. Supp. 2d 1232, 1235 (D. Kan. 2005) (discussing the jury's finding "that defendants directed their managers to clock out plaintiffs at the end of their scheduled shifts and before plaintiffs were finished working").

Defendants also argue that this aspect of Florece's motion should be denied because lead managers "are considered Defendants and Plaintiff cannot speak to them." (ECF 33, at 4.) This court's local rules adopt the Kansas Rules of Professional Conduct ("KRPC"), which generally prohibit a lawyer from communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter," including certain constituents of an organization. D. KAN. RULE 83.6.1(a); KRPC 4.2 & cmt. 7. Thus, in FLSA cases, ex parte communications between a plaintiff's attorney and managers who have authority over overtime issues may be improper. *See Weeks v. Indep. Sch. Dist. No. I-89*, 230 F.3d 1201, 1210-11 (10th Cir. 2000) (discussing Oklahoma's analogue to KRPC 4.2 and finding plaintiff's counsel's communications with managers responsible for checking or approving overtime claims were improper). But other courts have recognized that KRPC 4.2 does not necessarily bar communications with former employees. *See Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 683 (D. Kan. 2000) ("[F]*ormer* employees who no longer have an employment relationship with the organizational party are not included within the meaning of the term 'party' for purposes of Rule 4.2.").

14

Regardless, the court need not decide whether KRPC 4.2 would prohibit Florece's counsel from speaking with lead managers that defendants may identify in response to Interrogatory No. 8. Even if that were the case, Florece could still use that information to explore the extent of the alleged pay policies and practices through formal discovery. Interrogatory No. 8 is akin to interrogatories asking a party to identify witnesses with knowledge regarding an important issue in the case, which is generally an appropriate area of discovery. *See, e.g.*, *Hilt v. SFC Inc*., 170 F.R.D. 182, 185 (D. Kan. 1997) (requiring a plaintiff to fully answer an interrogatory seeking the names and addresses of witnesses who had knowledge of the plaintiff's discrimination allegations). Like the server-related information discussed above, the manager-related information Florece seeks in Interrogatory No. 8 could shed light on whether servers at Jose Pepper's restaurants were generally subject to the same uniform pay policies and practices at issue. Defendants have not supported their relevance objection, and the court will not deny Florece's motion simply because her counsel may not be able to communicate with some lead managers ex parte. Again, absent defendants' reliance on any properly supported proportionality objections that would justify limiting or denying this discovery, the court also grants this aspect of Florece's motion to compel.

### C. Florece's Motion is Denied as to Complaints.

Florece also asks the court to compel defendants to respond to Interrogatory No. 4. It seeks information on complaints regarding failure to pay for time worked made by any nonexempt hourly employee over the past five years. In the subject RFP, Florece further asks the court to compel defendants to produce copies of any identified complaints. Florece contends that this information bears on whether the pay policies and practices alleged in the complaint existed. Defendants object to the discovery, arguing that the interrogatory "is overbroad, not properly limited in temporal scope, and seeks information irrelevant to class certification." (ECF 33, at 5.)

15

The court agrees with defendants. The court recognizes that responsive information *might* be relevant to conditional certification, but these discovery requests are facially overbroad. They are not tailored to the issues in the case—namely, whether the putative opt-in plaintiffs were subject to the same complained-of decision, policy, or plan. In addition, these discovery requests seek information about complaints made by nonexempt hourly employees without regard to whether those employees were working as servers. Complaints by employees who were not working as servers have no bearing as to whether the putative opt-in plaintiff (all servers) were subject to the same pay policies and practices. Furthermore, any such complaints made outside of the three-year statute of limitations applicable to alleged willful violations of the FLSA would be irrelevant to conditional certification. *See Hammond*, 216 F.R.D. at 672 (limiting the temporal scope of discovery to three years prior to the date the lawsuit was filed and citing the FLSA's statute of limitations). In sum, these discovery requests are overbroad because they are not tailored to the issues on conditional certification. The court will therefore deny this aspect of Florece's motion to compel without prejudice. *See Bank of Am.*, 275 F.R.D. at 540-41 ("[I]t is within the court's discretion to limit the scope of pre-certification discovery in certain instances.").

## IV.   CONCLUSION

For the reasons discussed above, the court overrules defendants' relevance objections to Interrogatory Nos. 7 and 8. Defendants must serve responses to these by **February 10, 2021**. Defendants' objections to Interrogatory No. 4 and the related RFP are sustained, although the court denies this aspect of Florece's motion without prejudice because this information may be relevant at a later stage of the case.

**IT IS THEREFORE ORDERED** that plaintiff Kira Florece's Motion to Compel (ECF 31) is granted in part and denied in part without prejudice.

**IT IS SO ORDERED.**

Dated February 2, 2021, at Topeka, Kansas.

<div style="text-align: right;">

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

</div>

17