In the United States District Court
for the District of Kansas

————————

Case No. 2:20-cv-02339-TC-ADM

————————

KIRA FLORECE,
ON BEHALF OF HERSELF AND OTHERS SIMILARLY SITUATED,

*Plaintiffs*

v.

JOSE PEPPER'S RESTAURANTS, LLC, AND EDWARD J. GIESELMAN,

*Defendants*

————————

**MEMORANDUM AND ORDER**

Kira Florece filed this action on her own behalf and as a putative collective and class action against her former employer for alleged minimum wage and overtime pay violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq.* ("MMWL"). Doc. 1. Defendants filed a motion to dismiss. Docs. 9–10. For the following reasons, the motion is denied.

**I.**

Florece's Complaint alleges that Defendant Jose Pepper's Restaurants, LLC, owns and operates nine Jose Pepper's restaurants in Kansas. Doc. 1 at ¶¶ 4–5. Defendant Gieselman wholly owns both that LLC and four additional restaurants in Missouri, including Jose Pepper's Belton. *Id.* at ¶¶ 4–7. Florece contends that all thirteen restaurants operate as a joint employer under the FLSA and that the locations share employee services. *Id.* at ¶ 8.

Florece, a Missouri resident, alleges that she worked as a server at Jose Pepper's Belton between April 2019 and February 2020. *Id.* at ¶ 15. She claims that Jose Pepper's Restaurants, LLC and Gieselman ("Defendants") did not pay her or similarly situated employees across

the thirteen Jose Pepper's locations appropriate minimum wage or overtime compensation per the FLSA and, for employees at the Missouri locations, the MMWL. Specifically, Florece states that Defendants implemented four policies and practices that violated federal and state minimum wage and overtime laws: (1) prohibiting employees from clocking in until they began serving customers, even though they were required to be present and working prior to serving customers; (2) allowing employees to work overtime if they did not clock in; (3) denying overtime compensation after removing reported overtime hours from the timekeeping system; and (4) asking employees to report their overtime hours as regular hours worked under other employees' names. *Id.* at ¶ 18. Florece alleges that she personally refused to work overtime when not clocked in and to report overtime hours as regular hours under another employee's name. *Id.*

Florece's Complaint contains two basic claims on behalf of herself and putative class members. In Count I, she asserts a claim arising under the FLSA. *Id.* at ¶¶ 24–34. The proposed class is defined as those persons who worked as hourly nonexempt servers in Defendants' restaurants within three years prior to filing her Complaint. *Id.* at ¶ 26. In Count II, she lodges a claim under the MMWL. *Id.* at ¶¶ 35–46. The proposed class is similar to the FLSA claim, but obviously focuses on those who worked in Missouri. *Id.* at ¶ 36.

Defendants move to dismiss all claims. They argue that Florece lacks standing and fails to sufficiently state that she or anyone else worked overtime. Doc. 10 at 8–12. Defendants also urge the Court to either decline to exercise supplemental jurisdiction over the MMWL claims or find that the FLSA preempts MMWL minimum wage and overtime pay claims. *Id.* at 12–17.

## II.

Defendants claim that Florece lacks standing "because her Complaint affirmatively states that she did not suffer the alleged injury." Doc. 10 at 11. The facts pled and governing law undermine that contention.

Standing is a doctrine of judicial restraint. It limits federal courts to considering only those disputes where there is an active "case" or "controversy." U.S. Const. art. III, § 2. That limit on judicial power enhances liberty by restricting the powers that "an unelected, unrepresentative judiciary" may validly exercise. *Allen v. Wright*, 468 U.S. 737,

2

750 (1984). Dogged adherence to this limitation is critical because fed-eral courts are not "free-wheeling enforcers of the Constitution and laws." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006).

There are three general aspects of modern standing jurisprudence. To have standing, a plaintiff must have suffered (1) an injury-in-fact that is (2) fairly traceable to the defendant's actions and (3) likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury must invade a legally protected interest and be actual, concrete, and particularized to that plaintiff. *Id.* at 560. While Congress may define new areas of legal protection, plaintiffs must still show an invasion of their statutory rights that is concrete and particularized. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Whether Florece's allegations sufficiently allege standing depends on the nature of her claim. The FLSA entitles employees to minimum wage and overtime pay for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a)(1). Florece must, therefore, have pled (1) she herself worked in excess of forty hours per week, (2) Defend-ants failed to pay her minimum wage or overtime pay, and (3) she could recover her lost wages with a favorable outcome in this case. The MMWL is similar. *See* Mo. Rev. Stat. §§ 290.502(3) (establishing and requiring employers to pay employees a minimum wage), 290.505(1) (requiring employers to compensate employees who work more than forty hours in one workweek at one and one-half times their regular pay rate).

Florece's Complaint sufficiently alleges that she has standing to bring these claims. The injury-in-fact component is met because Flo-rece contends that she (and her similarly situated potential class mem-bers) routinely worked more than forty hours per week and did not receive correct wages for that time. *See, e.g., Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 146 (D. Mass. 2013) (finding that alleging uncompensated time worked was a sufficient injury-in-fact for an FLSA claim); *Shafir v. Continuum Health Partners, Inc.*, 57 F. Supp. 3d 325, 327 (S.D.N.Y. 2014) (same); *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 412 (D. Md. 2013) (same); *cf. Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1290 (D. Kan. 2005) (finding insufficient injury because the "plaintiff d[id] not allege that she ever worked overtime"). As the MMWL also ensures overtime and minimum wage compensation, Flo-rece's FLSA injury also constitutes an MMWL injury-in-fact. *See* Mo. Rev. Stat. § 290.505(1).

The other two aspects of standing are easily satisfied (and not materially challenged by Defendants). The Complaint alleges it was Defendants' policy to deny overtime through a variety of artifices and seeks a ruling in Florece's favor for wages that would be paid to her directly. That is sufficient. *Cf. Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016) (concluding that FLSA plaintiffs must demonstrate an employer-employee relationship to show injury and traceability because employees' § 206(a) injuries "are only traceable to, and redressable by, those who employed them"); *Cavallaro*, 971 F. Supp. 2d at 150 (same).

Defendants' principal standing argument is that Florece lacks standing because she did not personally endure two of the four practices Defendants allegedly used to deny overtime to their employees. Doc. 10 at 12. But focusing on which of the "policies and practices" caused Florece's injury is immaterial. FLSA and MMWL standing focus on whether Plaintiff alleged she was denied minimum wage and overtime pay that she earned. Here, the Complaint plainly satisfies that point; it alleges that Florece "routinely worked in excess of forty hours per workweek without receiving proper minimum wage and overtime compensation as required under the FLSA and MMWL." Doc. 1 at ¶ 18. That is sufficient.

The different policies imposed do, however, help trace Florece's (and the proposed class members') injury to Defendants. Florece alleged that Defendants were her employer and that they denied her sufficient wages for overtime work through more than one policy or practice. Doc. 1 at ¶¶ 18(1), 18(3). Assuming her allegations are true, Florece has shown Defendants' conduct—a failure to pay—caused her injury and can be remedied in this litigation. *See Cisneros v. EP Wrap-It Insulation, LLC*, No. CV 19-500, 2019 WL 5268634, at *5 (D.N.M. Oct. 17, 2019) (finding the plaintiff's injury, a lack of overtime compensation, traceable to the defendant's alleged failure to pay).

Defendants do not expressly contend that Florece lacks standing for purposes of representing the putative group of "similarly situated" current or former employees. That inquiry appears better suited to the class-certification process. In fact, discovery relating to the class is ongoing. *See generally* Doc. 36, *Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-TC-ADM, 2021 WL 351413, at *3 (D. Kan. Feb. 2, 2021). Whether Florece has standing to represent the class(es) is a question that can be addressed at the certification stage.

### III.

Defendants also argue that Florece's Complaint fails to allege sufficient facts to plausibly state an FLSA claim. Doc. 10 at 9–11. But in light of the governing standard, Florece adequately pled a factual basis for an FLSA claim.

Fed. R. Civ. P. 12(b)(6) authorizes dismissal for failure to state a claim. To state a claim, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has summarized two "working principles" that underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, the Court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Iqbal*, 556 U.S. at 678–79; *Kan. Penn Gaming*, 656 F.3d at 1214. Second, the Court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make her claim plausible. *Kan. Penn Gaming*, 656 F.3d at 1214.

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts viewed in the light most favorable to claimant must move the claim from merely conceivable to actually plausible. *Id.* at 678–80. The "mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis original).

Plausibility, like most things in life, depends on context. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). The nature and complexity of the claim define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Florece's complaint satisfies this standard. As noted in Part II, Florece alleges that she worked as Defendants' employee in excess of forty hours per week and that Defendants refused to pay her the minimum wage and overtime she was entitled to receive. Doc. 1 at ¶¶ 17–18.

Defendants' strongest contrary argument is that the Complaint fails to allege which week(s) Florece worked in excess of forty hours. Doc. 10 at 9–11. Specifically, they contend that, among other authorities, an unpublished Tenth Circuit decision "requires a complainant to allege at least one week where she was entitled to overtime compensation but did not receive such compensation." Doc. 24 at 7 (citing *ElHelbawy v. Pritzker*, 663 F. App'x 658, 663 (10th Cir. 2016)); Doc. 10 at 11. Not only do the authorities fail to support Defendants' contention, but the Complaint also meets that standard.

In *ElHelbawy*, the Tenth Circuit recognized that a plaintiff asserting an FLSA overtime claim "must allege that he or she worked more than forty hours in a given workweek without being compensated for overtime hours worked during that workweek," which the complaint failed to allege. 663 F. App'x at 663 (quoting *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644–45 (9th Cir. 2014)) (internal quotation marks omitted). There, the complaint alleged only that the defendant failed to pay the plaintiff for hours worked and continued assigning plaintiff work after her effective removal. *Id.*

In contrast to the allegations in that case, Florece specifically alleges that on "a weekly basis throughout [her] employment with Defendants, [she] routinely worked in excess of forty hours per workweek without receiving proper minimum wage and overtime compensation as required under the FLSA and MMWL." Doc. 1 at ¶ 18. That states a plausible claim. *Cf. ElHelbawy*, 663 F. App'x at 663; *Cerda v. Cillessen & Sons, Inc.*, No. 19-1111-JWB, 2020 WL 416979, at *5 (D. Kan. Jan. 27, 2020).

Defendants seem to latch onto the language in *ElHelbawy* about a "given" workweek and extrapolate that Florece needs to identify each particular week for which Defendants denied her overtime. Doc. 10 at 10–11. That effort fails for several reasons. The most fundamental reason is because courts are bound by the *holdings* of precedential cases, not *language* located within them. *Alexander v. Sandoval*, 532 U.S. 275, 282 (2001). And as applied to FLSA cases, *ElHelbawy* suggests it would be sufficient for an FLSA plaintiff to allege that he or she was regularly required to work in excess of forty hours per workweek without proper

payment. 663 F. App'x at 663; *see also Hall v. DIRECTV, LLC*, 846 F.3d 757, 776–77 (4th Cir. 2017) (holding that plaintiffs need not "identify a *particular* week . . . but [must provide] sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week"); *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 46 (1st Cir. 2013) (finding plaintiffs' complaint sufficient because the "basic thrust [wa]s that defendants' pay practices continuously required employees to work . . . [and] not receive compensation" and also alleged working during meal breaks, before or after shifts, and in training); *Sec'y of Labor v. Labbe,* 319 F. App'x 761, 763 (11th Cir. 2008) (requiring plaintiff only to show a failure to pay overtime compensation and/or minimum wages to employees).

### IV.

Defendants argue that this Court should not consider the MMWL claim for two independent reasons: (1) preemption and (2) supplemental jurisdiction. Neither merits the relief Defendants seek.

### A.

Federal preemption follows from the Supremacy Clause. It precludes enforcing state laws or regulations that tread on constitutional text, federal statutes, or treaties made under the authority of the United States. *See generally Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020). The type of preemption, express or implied, depends on the nature of the laws at issue. Regardless of the label used to describe the preemptive claim, "[i]nvoking some brooding federal interest or appealing to a judicial policy preference" is insufficient, as the party asserting preemption must "point specifically to a constitutional text or a federal statute that does the displacing or conflicts with state law." *Va. Uranium, Inc. v. Warren*, 139 S. Ct. 1894, 1901 (2019) (opinion of Gorsuch, J.).

Defendants argue that a species of implied preemption, known as obstacle or conflict preemption, exists in this case. *See generally ONEOK, Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015). Specifically, they contend that Florece's MMWL claim is "duplicative of her FLSA claims in Count I for overtime and/or minimum wages." Doc. 10 at 15–16. But absent a clear and manifest intent from Congress, it is presumed that state and federal law may coexist. *See Arizona v. United States*, 567 U.S. 387, 400 (2012); *see also Chamber of Commerce U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (opinion of Roberts, C.J.) (warning that

"[i]mplied preemption analysis does not justify a freewheeling judicial inquiry into whether a state statute is in tension with federal objectives") (internal citations omitted).

But Defendants have not established obstacle or conflict preemption could happen here. For that doctrine to override a state law, "compl[ying] with both federal and state [law must be] a physical impossibility" or state law must "stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (internal citations omitted). Neither situation is present: both the FLSA and the MMWL insist on payment of a minimum wage and overtime pay for hours worked in excess of forty hours per week. *Compare* 29 U.S.C. §§ 206 (minimum wage), 207 (overtime); *with* Mo. Rev. Stat. §§ 290.502 (minimum wage), 290.505 (overtime).

Instead, it appears Defendants are concerned that the MMWL remedies may duplicate those available under the FLSA. Doc. 10 at 16–17. That concern still fails to implicate preemption. *First*, Defendants have not identified any controlling authority to suggest the possibility of duplicative remedies violating the Supremacy Clause. *Cf. Garcia*, 140 S. Ct. at 806 (noting the "mere fact that state laws like the Kansas provisions at issue overlap to some degree with federal criminal provisions does not even begin to make a case for conflict preemption"). And, while not dispositive of an implied preemption challenge, it is noteworthy that Congress expressly recognized the FLSA would operate alongside complementary state employment laws. *See* 29 U.S.C. § 218(a). Additionally, Missouri federal courts confronted with the very argument Defendants make here have uniformly concluded the FLSA does not preempt MMWL claims. *See generally Fry v. Accent Mktg. Servs., L.L.C.*, No. 13-59, 2013 WL 2403669, at *2 (E.D. Mo. May 31, 2013) (collecting cases); Doc. 10 at 16 (acknowledging the same).

*Second*, the remedies available under the FLSA and MMWL do not completely overlap. The MMWL appears to afford greater remedies: Missouri minimum wages are higher than the federal minimum, *see* Mo. Rev. Stat. § 290.502, and the MMWL allows double the amount of liquidated damages available under the FLSA, *compare* 29 U.S.C. § 216(b) *with* Mo Rev Stat. § 290.527. The FLSA does not excuse non-compliance with state laws that establish a higher minimum wage. 29 U.S.C. § 218(a). To hold that a plaintiff cannot pursue these MMWL claims would impermissibly negate a congressional directive that such claims may proceed. *Cf. Va. Uranium*, 139 S. Ct. at 1903 (opinion of Gorsuch, J.).

The cases Defendants cite in support of dismissal are inapposite. For instance, the Tenth Circuit held in *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997), that the Kansas Supreme Court would not recognize a new common law cause of action for retaliation when there exists an adequate remedy under either state or federal statutory law. Whether a state supreme court might recognize a common law cause of action speaks not to whether federal law preempts a state statute. In fact, *Connor* does not appear to involve preemption at all.

So, too, with Defendants' district court citations, which discuss the interplay between Kansas statutes and the FLSA. *See, e.g.*, *McGowan v. Genesis Health Clubs Mgmt.*, No. 17-2419-DDC-KGS, 2018 WL 572052 (D. Kan. Jan. 26, 2018). The MMWL is distinct from the Kansas laws at issue. Whereas Missouri law expressly provides for an employee's recovery of overtime pay, Mo. Rev. Stat. § 290.505(1), neither of the Kansas laws do when the FLSA applies. *McGowan*, 2018 WL 572052, at *4–5. It is, therefore, immaterial whether—as in the cases Defendants cite—a Kansas statutory claim could be pled in concert with a similar FLSA claim.

**B.**

Defendants finally assert that this Court should decline to exercise supplemental jurisdiction over the MMWL claims. Doc. 10 at 12–14. The relevant statute states that, subject to certain exceptions, in "any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009).

Defendants have not provided a meaningful basis on which to decline the exercise of supplemental jurisdiction. Forcing Florece to litigate her related claims in different jurisdictions would be a waste of the parties' and judicial resources.

**V.**

Defendants' Motion to Dismiss (Doc. 9) is DENIED without prejudice.

IT IS SO ORDERED.


Date:  February 24, 2021              s/ Toby Crouse
                                     Toby Crouse
                                     United States District Judge