**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

KIRA FLORECE, on behalf of herself and others
similarly situated,

       Plaintiff,

       v.

JOSE PEPPER'S RESTAURANTS, LLC, et al.,

       Defendants.

Case No. 20-2339-ADM

**MEMORANDUM AND ORDER**

Plaintiff Kira Florece ("Florece"), on behalf of herself and others similarly situated, asserts that defendants Jose Pepper's Restaurants, LLC ("Jose Pepper's") and Edward J. Geiselman ("Geiselman") violated the Fair Labor Standards Act ("FLSA") and Missouri Minimum Wage Law ("MMWL").  This matter is now before the court on Florece's Unopposed Motion for Conditional Class Certification & Preliminary Approval of Stipulation of Settlement Agreement and Release.  (ECF 85.)  For the reasons discussed below, Florece's motion is granted in part and denied in part without prejudice.  The court conditionally certifies the FLSA collective action and certifies the MMWL class action but does not preliminarily approve the parties' Stipulation of Settlement Agreement and Release ("Settlement Agreement") at this time, for the reasons discussed below.  The parties may address the issues identified below in the Settlement Agreement and proposed Notices and Claim Forms, and then file a renewed unopposed or joint motion.  Florece's Unopposed Motion for Approval of Attorney's Fees, Costs and Service Award (ECF 87) is denied without prejudice as premature.

## I.    BACKGROUND

Jose Pepper's owns and operates nine restaurants in Kansas, and Gieselman owns and operates four Jose Pepper's restaurants in Missouri.  Florece worked as a server at the Jose Pepper's restaurant in Belton, Missouri, from April 2019 through February 2020.  She filed this lawsuit as a putative collective and class action in July 2020, alleging that she and other servers who work at the thirteen Jose Pepper's locations were not properly paid minimum wage and overtime compensation as required by the FLSA and, as to Missouri employees, the MMWL.  Specifically, Florece's complaint alleges that she and similarly situated employees were: (1) required to be present and working before they clocked in but they were prohibited from clocking in until they began serving customers; (2) allowed to work overtime if they did not clock in; (3) denied overtime compensation after defendants removed reported overtime hours from the timekeeping system; and (4) asked to report overtime hours worked as regular hours worked under another employee's name.  (ECF 1 ¶ 18.)  Florece's amended complaint further alleges that defendants (5) asked servers to work off the clock during the COVID-19 pandemic solely for tips, inappropriately pooled and shared those tips with non-tipped employees, and had servers spending more than 20% of their time during workweeks performing non-tipped tasks; and (6) failed to inform servers of the FLSA's tip credit provisions.  (ECF 58 ¶¶ 18, 22.)  Defendants deny Florece's allegations.

The court bifurcated discovery into two phases, beginning with discovery relating to conditional certification of the FLSA collective action.  (ECF 15.)  In this first phase, the parties exchanged initial disclosures and written discovery.  Defendants produced personnel-related records, payroll records, timekeeping data, and policies and procedures related to timekeeping, compensation, and training.  (ECF 86, at 4.)  The parties also had a dispute over the scope of pre-

certification discovery, with the court ultimately ordering defendants to produce the names, contact, and employment information for servers and lead managers. *See Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-TC-ADM, 2021 WL 351413 (D. Kan. Feb. 2, 2021). Florece then interviewed witnesses, and both sides produced witness declarations. (ECF 86, at 4.) Florece engaged a statistical and pay data expert, Liesl Fox, Ph.D., to prepare a report regarding alleged damages; defendants responded and provided their own analysis. (*Id.*) Defendants also deposed Florece. (*Id.* at 3.)

The parties mediated the case and reached a settlement before Florece filed any motions to certify a collective or class action. Florece now seeks conditional certification of an FLSA collective action and certification of a Rule 23 class action for settlement purposes. (ECF 85.) She also seeks preliminary approval of the parties' settlement agreement, including the parties' proposed notices to class and collective members, objection process, and claim process. (*Id.*) Defendants do not oppose Florece's motion.

## II.   ANALYSIS

Court approval is required to settle both Rule 23 class actions and FLSA claims. *See Pliego v. Los Arcos Mexican Rests., Inc*., 313 F.R.D. 117, 127-28 (D. Colo. 2016) (discussing approval of a settlement agreement in a hybrid FLSA collective and Rule 23 class action); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (stating that, to settle private FLSA actions, the parties must present their proposed agreement to the court, which may then enter a stipulated judgment after scrutinizing the agreement for fairness); FED. R. CIV. P. 23(e) ("The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled . . . only with the court's approval."). Where, as here, the court has not yet certified an FLSA collective action or a Rule 23 class action, the court must first consider

certification before addressing the proposed settlement.  *See Flerlage v. US Foods, Inc.*, No. 18-2614-DDC-TJJ, 2020 WL 4673155, at *2-*4, *8 (D. Kan. Aug. 12, 2020).

### A.    Certification

#### 1.    Rule 23 Class Certification for the MMWL Settlement Class

The court turns first to Florece's request that the court certify a Rule 23 class action for the MMWL settlement class.  The parties' proposed MMWL settlement class consists of "[a]ll persons who worked as hourly nonexempt servers at Defendants' four restaurant locations in the state of Missouri from July 7, 2017, through May 21, 2021."  (ECF 86, at 17.)

Federal Rule of Civil Procedure 23 permits a member of a class to sue as a representative party on behalf of all members.  To approve a class action settlement, the court must first conduct a "rigorous analysis," *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011), to determine whether certifying the proposed class is appropriate.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (stating a "class action" that may be compromised with court approval under Rule 23(e) is "one qualified for certification under Rule 23(a) and (b)"); *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("Class action settlements are premised upon the validity of the underlying class certification.").  A party seeking class certification has the "strict burden" to show that the four class certification prerequisites set forth in Rule 23(a) are met.  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).  In addition, that party must show the class action falls into one of the three categories described in Rule 23(b).  When evaluating a request for settlement-only class certification, a "court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem Prods.*, 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).  "But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or

overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.*

### a.  Numerosity

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable."  The movant must "produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Bennett v. Sprint Nextel Corp.*, 298 F.R.D. 498, 504 (D. Kan. 2014).  "[T]here is no set formula to determine if the class is so numerous that it should be so certified." *Trevizo*, 455 F.3d at 1162 (quotation omitted).  The inquiry is fact-specific, and the district court has "wide latitude . . . in making this determination." *Id.*

Here, Florece states that the proposed class of Missouri servers exceeds 500 persons.  (ECF 86, at 13-14.)  It appears that Florece's estimate has a reasonable basis, as she reviewed payroll and timekeeping data for all class members and conducted witness interviews in discovery.  (*Id.* at 4.)  A class of over 500 members is generally considered so numerous that joinder would be impractical. *See, e.g.*, *Decoteau v. Raemisch*, 304 F.R.D. 683, 687-88 (D. Colo. 2014) (finding a class of at least 500 individuals satisfied Rule 23(a)(1)); *Armstrong v. Powell*, 230 F.R.D. 661, 674-75 (W.D. Okla. 2005) (same); *Knight v. Mill-Tel, Inc.*, No. 11-1143-EFM, 2013 WL 3895341, at *5 (D. Kan. July 29, 2013) (same).  Accordingly, the court finds that the numerosity requirement is satisfied at this procedural juncture.  The court assumes the parties will present evidence establishing the size of the class at the final approval hearing. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 258 F.R.D. 671, 679 (D. Kan. 2009) (finding the numerosity requirement satisfied where plaintiffs did not produce evidence or show their estimate was reasonable, but could do so at the final approval hearing); *see also Nieberding v. Barrette Outdoor Living, Inc.*,

302 F.R.D. 600, 608 (D. Kan. 2014) (finding the numerosity requirement satisfied where the parties stipulated that at least 233 people were class members).

### b.   Commonality

Rule 23(a)(2) requires showing "questions of law or fact common to the class."  A party seeking class certification must "demonstrate that the class members 'have suffered the same injury'" to meet the commonality requirement.  *Dukes*, 564 U.S. at 349-50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  In other words, the "claims must depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  A single common question of law or fact suffices to satisfy the commonality requirement.  *Id.* at 359.

Florece contends that she has met the commonality requirement because of the following common questions of fact:

> whether Defendants paid minimum wages and any overtime premium for hours worked in excess of forty per work week, whether Plaintiff and the Missouri servers worked in excess of forty hours per work week, and whether Defendant properly informed Plaintiff and the Missouri class of the required tip-credit information.

(ECF 86, at 14.)  The court agrees.  Further, all putative class members bring claims under the same state law and suffered the same injury, *i.e.* Missouri servers were allegedly not paid minimum wage and overtime as required by the MMWL.  Florece contends that the same pay policies affected all Missouri servers (*see* ECF 58 ¶ 18) and that she has obtained evidence through discovery supporting this (*see* ECF 86, at 16).  Whether Florece can show that defendants' policies violated the MMWL will resolve an issue central to all Missouri servers' claims.  The commonality requirement is therefore satisfied here.  *See, e.g.*, *Garcia v. Tyson Foods, Inc.*, 890 F. Supp. 2d

1273, 1283 (D. Kan. 2012) (finding commonality requirement met for Kansas Wage Payment Act ("KWPA") class, where the employees were paid under the same policies), *aff'd*, 770 F.3d 1300 (10th Cir. 2014); *Flerlage*, 2020 WL 4673155, at *3 (D. Kan. Aug. 12, 2020) (same); *Knight*, 2013 WL 3895341, at *5-*6 (same).

### c.   Typicality

Rule 23(a)(3) requires Florece's claims to be typical of the claims of the class she represents.  A named plaintiff's interests and claims do not need to be identical to class members' interests and claims to satisfy typicality, but they must not be significantly antagonistic.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 680 (D. Kan. 1991).  In addition, "so long as the claims of the class representative and class members are based on the same legal or remedial theory," class members' differing fact situations will not defeat typicality.  *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014) (quotation omitted).  "[T]ypicality exists where . . . all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."  *Devaughn*, 594 F.3d at 1199.

Florece contends that "her interests are near identical to all class members: payment of wages owed for off-the-clock work and payment for misapplying the minimum wage tip-credit due to lack of proper notice."  (ECF 86, at 14-15.)  She states that her individual claim is not "antagonistic to the class claims in any manner."  (*Id.* at 15.)  The court agrees.  Florece's legal and remedial theories under the MMWL are identical to those of the class.  Florece has satisfied the typicality requirement.  *See, e.g.*, *Garcia*, 890 F. Supp. 2d at 1283 (finding the plaintiffs proved typicality for a KWPA class, where their legal theory that the defendant's pay policies resulted in undercompensation applied to all employees); *see also Knight*, 2013 WL 3895341, at *6 ("Even

where individual issues abound among class members, this Court has found typicality when a named plaintiff's KWPA claim proceeds under the legal theory that the employer's compensation system failed the requirements of the KWPA.").

### d.    Adequate Representation

Rule 23(a)(4) requires showing the named plaintiff "will fairly and adequately protect the interests of the class."  To satisfy this prerequisite, a named plaintiff must be a class member and show that (1) her interests do not conflict with class members' interests, and (2) she will vigorously prosecute the action through qualified counsel.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Bennett*, 298 F.R.D. at 506.  "Minor conflicts among class members do not defeat certification; to defeat class certification, a conflict must be fundamental and go to specific issues in controversy."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 671 (D. Kan. 2013) (quotation omitted).  "A fundamental conflict exists where some class members claim to have been harmed by conduct which resulted in benefit to other class members."  *Id.*

Florece states that she and the class members "share the same grievance regarding unpaid wages," and she has no interest or claim that would conflict or be harmful to the others.  (ECF 86, at 15.)  She also states that she has retained counsel experienced in wage and hour class actions.  The court finds that Florece has met this requirement, as there is no evidence that she has any conflict with the class members, and she has retained qualified counsel.

### e.    Rule 23(b)(3)

Because Florece has satisfied the Rule 23(a) prerequisites, the court now turns to Rule 23(b).  Florece seeks certification under Rule 23(b)(3).

### i.    Predominance

Rule 23(b)(3) requires showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation omitted); *see also Amchem Prods.*, 521 U.S. at 623 (stating that the inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). The court must carefully scrutinize the relationship between individual questions, "where members of a proposed class will need to present evidence that varies from member to member," and common questions, "where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods*, 577 U.S. at 453 (alteration in original) (quotation omitted). "[S]o long as at least one common issue predominates, a plaintiff can satisfy Rule 23(b)(3)—even if there remain individual issues, such as damages, that must be tried separately." *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019).

Florece argues that class-wide issues predominate because the same evidence will establish defendants' alleged failure "to inform/post information for its [Missouri] servers." (ECF 86, at 16.) However, Florece's amended complaint alleges that defendants failed to inform servers of the FLSA's tip credit provisions, not the MMWL. (*See* ECF 86, at 3 (stating that plaintiff added an FLSA claim to the amended complaint "regarding properly informing tipped employees of the tip-credit requirements").) Notice and posting-related evidence therefore does not appear relevant to class-wide issues.

But Florece also states that she "has obtained sufficient evidence via declarations that the alleged 'off-the-clock' policy exists at all four Missouri [Jose Pepper's] locations." (*Id.*) "Courts routinely have found predominance where . . . the challenged [wage] policy is common to the class as a whole and the proposed class members share similar job duties." *Felps v. Mewbourne Oil Co.*, 336 F.R.D. 664, 675 (D.N.M. 2020) (collecting cases); *see also Pliego*, 313 F.R.D. at 127 (finding common questions predominate where the controversy spanned the hourly wage workforce and raised common questions including whether the defendants' overtime policy violated the law); *Flerlage*, 2020 WL 4673155, at *4 (same). Predominance is met here on this basis. Florece and the other class members all held the same server position, and the case turns on whether defendants' policy (or policies) violated the MMWL by denying class members minimum wage and overtime compensation. This is a common issue that is susceptible to generalized, class-wide proof and predominates over any individual questions, such as the damages due to each class member. *See Felps*, 336 F.R.D. at 676 ("[W]here . . . the plaintiff's theory of liability is predicated on the blanket application of policies and practices to an entire class, courts have uniformly rejected the notion that predominance is defeated by the specter of individualized inquiries into the numbers of hours worked by each class member.").

### ii.    Superiority

In addition to predominance, a party seeking class certification under Rule 23(b)(3) must show "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Factors relevant to this analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*; *see also In re: Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2016 WL 5371856, at *11 (D. Kan. Sept. 26, 2016) (noting that these non-exhaustive factors are pertinent to determining superiority). "Where individual claims are similar, a class action may be superior to discrete actions that could be grossly inefficient, costly, and time consuming because the parties, witnesses, and courts would be forced to endure unnecessarily duplicative litigation." *Bennett*, 298 F.R.D. at 513 (quotation omitted).

Florece contends that a class action is superior because her claims and those of the class are "substantially similar, rely upon much of the same evidence, and will require many of the same witnesses and exhibits." (ECF 86, at 17.) She further contends that litigating hundreds of nearly identical claims would be "grossly inefficient" compared to a class action. (*Id.*) Florece's reasoning is persuasive, and there is no indication that any of the Rule 23(b)(3) factors weigh against proceeding on a class basis. Indeed, due to the nature of the class members' wage claims, their interest in bringing individual claims is likely minimal due to the relatively small amount at stake compared to the cost of a separate lawsuit. *See Pliego*, 313 F.R.D. at 127 (finding superiority met where the lawsuit involved "the relatively small claims of low-wage [restaurant] workers, most of whom lack English proficiency, and most of whom were paid at or near the minimum wage"); *Flerlage*, 2020 WL 4673155, at *4 ("Class members have little interest in individually controlling the prosecution of separate [KWPA] actions because the amount at stake for each individual class member is small relative to the cost of maintaining a separate action."). There is also no evidence that any class members have instituted separate litigation already. For these reasons and those stated by Florece, the court agrees that a class action is superior to other methods

for adjudicating the class members' claims.  Accordingly, Florece has satisfied Rule 23(b)(3)'s

predominance and superiority requirements.

*   *   *

Florece has met the requirements of Rule 23(a) and (b)(3).  The court therefore grants the

aspect of Florece's motion seeking preliminary certification of the following settlement-only

MMWL class:

> All persons who worked as hourly nonexempt servers at
> Defendants' four restaurant locations in the state of Missouri from
> July 7, 2017, through May 21, 2021.

The court further appoints Florece as class representative.

An order certifying a class must also appoint class counsel who will fairly and adequately

represent the interests of the class.  FED. R. CIV. P. 23(c)(1)(B) & (g).  In appointing class counsel,

the court must consider:

> (i) the work counsel has done in identifying or investigating
> potential claims in the action;

> (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action;

> (iii) counsel's knowledge of the applicable law; and

> (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A).  The Settlement Agreement names Florece's attorneys as class counsel

(*see* ECF 86-1 ¶ 1.5), but Florece's motion does not specifically request that they be appointed

class counsel.  Nevertheless, the court has reviewed the materials submitted with Florece's

attorneys' fee motion, which detail plaintiffs' counsel's extensive experience litigating FLSA and

related class action claims.  (*See* ECF 88-1, 88-2, 88-3.)  In view of this and the court's knowledge

of counsel's work in this case, the court finds that the Rule 23(g)(1)(A) criteria are satisfied.

Accordingly, the court appoints Brendan J. Donelon of Donelon, P.C. and Brandon Boulware and Erin Lawrence of Boulware Law as joint class counsel.

### 2.    Conditional Certification of FLSA Collective Action

The court now turns to Florece's request that the court conditionally certify an FLSA collective action.  The parties' proposed FLSA settlement collective consists of "[a]ll persons who worked as hourly nonexempt servers at Defendants' thirteen restaurant locations in the state of Kansas from May 21, 2018, through May 21, 2021."  (*Id.* at 13.)

The FLSA permits an employee to bring a collective action on the employee's behalf and "other employees similarly situated." 29 U.S.C. § 216(b).  The Tenth Circuit has approved a two-step approach to determine whether putative collective members are similarly situated such that proceeding as a collective action is appropriate.  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  Initially, the court makes its determination based on "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (quotation omitted). "That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members" so that they may choose to opt in.  *See In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012).  The standard for conditional certification is lenient and "typically results in certification."  *Id.*  If necessary, the second step occurs following the close of discovery, often prompted by a party's motion.  *See Thiessen*, 267 F.3d at 1102-03.  At that point, "the court determines whether the class should remain certified, or be decertified using a stricter standard."  *Flerlage*, 2020 WL 4673155, at *8.

Florece's amended complaint alleges that all Jose Pepper's servers were subject to the same policies and practices denying them minimum wage and overtime pay.  Specifically, it alleges that

defendants required servers to work prior to clocking in; permitted them to work overtime so long as they were not clocked in; had overtime hours worked removed from the timekeeping system; and required servers to report overtime worked under another employee's name. (ECF 58 ¶ 18.) Florece also alleges that defendants violated FLSA requirements relating to tipped employees, including failing to properly inform servers of the statute's tip credit provision. (*Id.* ¶¶ 18, 22.) Florece's motion discusses the discovery she obtained and Dr. Fox's damage calculations for each collective member, which appear to support Florece's claim that Kansas servers were denied compensation under the FLSA.

Given the lenient standard applicable to conditional certification, the court finds it appropriate to certify a collective action for the purpose of sending an opt-in notice to potential plaintiffs. The court therefore grants the aspect of Florece's motion seeking conditional certification of the following settlement-only FLSA collective:

> All persons who worked as hourly nonexempt servers at Defendants' four restaurant locations in the state of Missouri from July 7, 2017, through May 21, 2021.

**B.     Preliminary Settlement Approval**

The court now turns to the Settlement Agreement, which proposes to resolve the MMWL class action and FLSA collective action. The Settlement Agreement requires defendants to pay no more than $1,750,000 to settle this case (the "Gross Settlement Fund"). (ECF 86-1 ¶ 1.14.) Out of the Gross Settlement Fund, defendants will pay court-approved attorneys' fees, expenses, and costs; costs and expenses incurred for the services provided by Simpluris, Inc., the third-party administrator the parties selected to assist with settlement administration (the "Claims Administrator"); and Florece's service award, resulting in a Net Settlement Fund from which the MMWL class members' and FLSA collective members' claims will be paid. (*Id.* ¶¶ 1.16, 3.1-.2, 4.1-.2.) The Settlement Agreement limits plaintiffs' counsel to seeking $577,500 in attorneys'

fees (33% of the Gross Settlement Fund) and an estimated $13,154.33 in expenses and costs.  (*Id.* ¶ 3.1.)  Florece will seek a service award of $2,000.  (*Id.* ¶ 4.2.)  The Settlement Agreement does not specify the amount of the Claims Administrator's anticipated costs and expenses, but Florece's motion states that they will be $21,500.  (ECF 86, at 10.)

After these deductions, the Net Settlement Fund will consist of approximately $1,135,845 to divide amongst class and collective members who return a Claim and Release Form.  (*See id.*)  Florece's expert witness Dr. Fox analyzed payroll data for class and collective members and calculated:

- minimum and overtime wages owed for off-the-clock work, by applying an average time—30 minutes—for each shift worked during the relevant time period;

- minimum wages owed if defendants were not able to apply a tip credit; and

- minimum and overtime wages owed as a result of formula errors in defendants' payroll system.

(ECF 86-1 ¶ 4.1; ECF 86, at 6-7.)  The parties have agreed to a Plan of Allocation by which the amount paid to each class and collective member under the Settlement Agreement will be a prorated portion of the Net Settlement Fund based on Dr. Fox's calculations of the minimum and overtime wages owed to each.  (ECF 86-1 ¶¶ 1.21, 4.1; ECF 86, at 6.)  Prior to proration, Dr. Fox will apply a 1.3 multiplier to the amounts owed to class members to reflect the greater recovery possible under the MMWL because of its three-year statute of limitations and treble damages provision, *see* MO. REV. STAT. § 290.527.[1]  (ECF 86-1 ¶ 4.1; ECF 86, at 7.)  Under the Plan of Allocation, the average payment to class and collective members will be $568.49, and no payment will be less than $50.  (ECF 86-1 ¶ 4.1; ECF 86, at 7-8.)

---

[1] The FLSA has a default two-year statute of limitations, unless a plaintiff can prove the defendant's conduct was willful, and only allows for double damages.  *See* 29 U.S.C. §§ 216, 255.

For the reasons discussed below, the court does not preliminarily approve the Settlement Agreement at this time.

### 1.      FLSA Settlement Approval

To approve an FLSA settlement, the court must determine that "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees." *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 2473542, at *3 (D. Kan. May 13, 2020). The court must also evaluate whether any proposed service award to the named plaintiff is reasonable. *Id.* Although the FLSA does not require a fairness hearing like for a Rule 23 class action settlement, "this court routinely holds fairness hearings for FLSA settlements unless the parties notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object." *Lundine v. Gates Corp.*, No. 18-1235-JPO, 2021 WL 2228504, at *1 (D. Kan. May 11, 2021).

### a.      Bona Fide Dispute

A party seeking approval of an FLSA settlement must submit sufficient information for the court to conclude that a bona fide dispute exists. *Flerlage*, 2020 WL 4673155, at *9. The mere fact that an adversarial lawsuit exists is not enough to satisfy this requirement. *Pliego*, 313 F.R.D. at 129. Rather, the party must provide (1) a description of the nature of the dispute, (2) a description of the employer's business and the type of work performed by the employees, (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime, (4) the employees' justification for the disputed wages, and, (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Id.* at 128-29; *Flerlage*, 2020 WL 4673155, at *9.

Here, the parties' dispute centers on whether restaurant servers were paid minimum wage and overtime compensation as required by the FLSA. Florece contends that servers were required to work prior to clocking in, allowed to work overtime so long as they did not clock in, asked to report overtime hours under other employees' names, and had their reported overtime hours removed from the timekeeping system. Florece also contends that defendants could not legally apply the FLSA's tip credit towards servers' minimum wages because defendants did not provide the required tip-credit notice. Florece further contends that servers were asked to work only for tips during the COVID-19 pandemic, asked to spend more than 20% of their working time on non-tipped tasks, and required to share tips with non-tipped employees.

On the other hand, defendants dispute that servers are due any unpaid minimum wage or overtime compensation. Florece states that defendants have shown they maintained pay and timekeeping policies, trained servers on those policies, and had servers affirm their understanding of those policies, including the obligation to record and report all time worked. In addition, defendants contend that posters informing servers of the FLSA tip credit are hung in a common area at each Jose Pepper's restaurant. Defendants also produced payroll data in discovery showing instances where servers recorded and received overtime pay, and defendants further contend that Florece's claims regarding servers working overtime without pay on certain dates are—practically—impossible.

Given the parties' positions and the court's prior experience with the case, the court concludes that a bona fide dispute over whether defendants violated the FLSA exists here, and it is possible that either side could prevail if the case continued.

### b.    Fair and Equitable

"[A]n FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Pliego*, 313 F.R.D. at 130.  To determine whether a proposed FLSA settlement is fair and equitable, courts examine the factors applicable in the Rule 23(e) settlement approval context.  *Elston*, 2020 WL 2473542, at *4.  Those factors are: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist that place the litigation's ultimate outcome in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable. *Rutter*, 314 F.3d at 1188; *see also Elston*, 2020 WL 2473542, at *4 (listing the *Rutter* factors). The court must also examine additional considerations in light of the FLSA's history and policy, including "whether the proposed agreement contains overly-broad releases or restrictive confidentiality provisions, or fails to provide recourse to opt-in members who object to the proposed settlement." *Elston*, 2020 WL 2473542, at *4.

Here, the Settlement Agreement might very well pass muster under the *Rutter* factors. However, before even getting to that analysis, the court has identified more obvious, threshold flaws in the proposed settlement.

### i.    The Allocation Plan

Florece states that her expert "calculated that overtime owed the class members for 'off the clock' work plus liquidated damages under the respective FLSA and MMWL statutes for the class would be $1,538,907.64."  (ECF 86, at 22 n.8.)  It is unclear how much class and collective members are allegedly owed for the other claims in the amended complaint.  (*See id.* (stating that Dr. Fox's analysis did not "include damages from the more difficult claim of failing to inform all

employees of the law under the tipped wage credit").)  Florece states that the Net Settlement Fund is 74% of the total overtime and liquidated damages owed to the 1,998 class and collective members.  (*Id.* at 22.)  Through the parties' agreed Plan of Allocation, those members will receive varying amounts depending on the number of shifts worked, as discussed above.

Florece has not provided enough information for the court to evaluate whether the Settlement Agreement provides adequate compensation to the collective members.  Although the Settlement Agreement and Florece's motion generally describe the Plan of Allocation, Florece does not explain the bases for her expert's calculations.  For example, it is unclear how many hours servers allegedly worked without adequate compensation, why Dr. Fox's calculations used 30 minutes as an average for off-the-clock work per shift, and what rate(s) of pay Dr. Fox used.  It is also unclear how the pro rata amounts collective members will receive under the Settlement Agreement compare to the full amounts they are allegedly owed.   Although the court understands that some degree of estimation may be required, Florece has not sufficiently explained the rationale underlying the basic inputs into Dr. Fox's calculations.  Consequently, the court declines to preliminarily approve the Settlement Agreement because the record before the court does not provide sufficient information for the court to meaningfully evaluate whether the proposed compensation to collective members is fair and equitable.  *See, e.g.*, *Elston*, 2020 WL 2473542, at *5 (declining to approve an FLSA settlement where the plaintiff did not elaborate on the damages model used, and the court had "no way of knowing whether the proposed settlement amount . . . [was] fair and equitable").

### ii.    Release

"It is inappropriate to require a plaintiff to agree to an overly-broad release as part of a wage settlement."  *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 354956,

at *6 (D. Kan. Jan. 29, 2019); *see also Wisneski v. Belmont Mgmt. Co., Inc.*, No. 19-2523-JAR, 2020 WL 3218199, at *3 (D. Kan. June 15, 2020).   Employers are required to "pay, unconditionally, a worker's wages, and they cannot use the settlement of FLSA claims to extract a general release of claims before paying over the wages."   *Elston*, 2020 WL 2473542, at *6 (quotation omitted); *see also Cazeau v. TPUSA, Inc.*, No. 2:18-cv-00321-RJS-CMR, 2020 WL 3605652, at *7 (D. Utah July 2, 2020) (stating that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" (quotation omitted)). Otherwise, employers would be unfairly provided with a "windfall should some unknown claim accrue to the employee at a later time."   *Elston*, 2020 WL 2473542, at *6 (quotation omitted); *cf. Cazeau*, 2020 WL 3605652, at *7 (noting that courts will approve broader releases where a plaintiff is provided additional consideration, beyond compensation for an FLSA claim).

Here, the Settlement Agreement requires collective members to release:

> any and all wage and hour and wage payment claims of whatever nature that [they] may have against any of the Released Parties . . . , whether known or unknown, as a result of actions or omissions through and including the Claim Deadline, whether under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, including, but not limited to, the FLSA, the MMWL, the Kansas Wage Payment Act, and any other federal, state, or local wage and hour or wage payment laws, including any and all claims thereunder for unpaid overtime, liquidated damages, unpaid wages, deductions, minimum wages, premium pay, interest, attorneys' fees, injunctive relief, or penalties related to overtime, missed meal periods, missed rest breaks, breach of contract, quantum meruit or retaliation related to wage claims, the prompt pay laws of any state, and other alleged wage and hour violations, and any claims related to the Employment Retirement Income Security Act of 1974, as amended ("ERISA").

(ECF 86-1 ¶¶ 1.24, 7.2; *see also* ECF 86-1, at 34 (release provision in proposed Notice for the collective class).)   The term "Released Parties" include JPR, Geiselman, thirteen other Jose Pepper's entities, and

> their predecessors, successors, and present, future and former
> affiliates, parents, subsidiaries, insurers, officers, directors, board
> members, attorneys, agents, representatives, employees, and
> assigns, including, without limitation, any investors, trusts, or other
> similar or affiliated entities and all persons acting by, through,
> under, or in concert with any of them, including any party that was
> or could have been named as a defendant in this action.

(*Id.* ¶ 1.25.)

This release is mostly focused on wage-related claims, which is permissible.  *See, e.g.*,

*Brittle v. Metamorphosis, LLC*, No. 20 CIV. 3880 (ER), 2021 WL 606244, at *4 (S.D.N.Y. Jan.

22, 2021) ("[A] plaintiff may release any and all wage-and-hour claims that are at issue or could

have been at issue in the instant litigation.").  But it is overbroad to the extent that it also requires

collective members to release any ERISA claims regardless of whether they are related to the

wage-related claims asserted in this lawsuit.  *See Christeson*, 2019 WL 354956, at *7 ("[R]equiring

release of claims against trustees, insurers and co-insurers is also overly-broad and unfair.");

*Barbosa v. Nat'l Beef Packing Co., LLC*, No. 12-2311-KHV, 2014 WL 5099423, at *8 (D. Kan.

Oct. 10, 2014) (finding a release that insulated the employer's plan administrator from benefit

claims overly broad and unfair).  The court will not approve the parties' Settlement Agreement

until the release provision is narrowed.

### iii.    Confidentiality

In addition, confidentiality provisions in FLSA settlement agreements are generally found

to contravene the FLSA's legislative purpose and "undermine[] the Department of Labor's

regulatory effort to notify employees of their FLSA rights."  *Barbosa*, 2014 WL 5099423, at *8

(quotation omitted); *see also Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2016 WL

2848919, at *3 (D. Kan. May 16, 2016) ("Our court consistently has refused to approve FLSA

settlement agreements . . . that prohibit class members from disclosing the terms to anyone except

a limited number of individuals.").  Here, the Settlement Agreement includes a confidentiality

provision that states: "The Parties' negotiations and the terms of this Settlement Agreement shall be held confidential other than necessary disclosures made to the Court." (ECF 86-1 ¶ 21.1.) The provision further purports to prevent counsel, Florece, and the class and collective members from making statements to the public or media "regarding the Settlement or any of its terms, including statement on any website(s) or via social media." (*Id.*) The court also declines to approve the Settlement Agreement because this confidentiality provision undermines the FLSA's purpose. *See Lundine*, 2021 WL 2228504, at *2 (rejecting an essentially identical confidentiality provision).

### iv.   Service Award

The court must also examine whether any service award payment to the named plaintiff is fair and reasonable. *Flerlage*, 2020 WL 4673155, at *10. Here, the Settlement Agreement provides for a $2,000 service award to Florece. (ECF 86-1 ¶ 4.2.) But Florece has not provided any information from which the court can evaluate whether a $2,000 service award is fair and reasonable. For example, courts in this District have "consistently found that $20 per hour is a reasonable incentive fee in . . . FLSA cases." *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 6318660, at *11 (D. Kan. Oct. 28, 2020); *see also Flerlage*, 2020 WL 4673155, at *10 (discussing "the court's $20 per hour standard" for service awards). But Florece has not provided any estimate of the number of hours she has invested in this lawsuit, or any other specifics from which the court can gauge how to value her involvement. Because the court cannot evaluate whether a $2,000 service award is fair and reasonable, the court also will not preliminarily approve this aspect of the Settlement Agreement.

### c.   Attorneys' Fees and Costs

A settlement agreement resolving FLSA claims must include an award of reasonable attorneys' fees and the costs of the action. *See* 29 U.S.C. § 216(b); *Flerlage*, 2020 WL 4673155,

at *11.  The court has "discretion to determine the amount and reasonableness of the fee, [but] the FLSA fee award nevertheless is mandatory."  *Flerlage*, 2020 WL 4673155, at *11.  Where a defendant agrees not to oppose a request for attorneys' fees payable out of a common settlement fund, the court "skeptically examine[s] and analyze[s] the fee and cost proposal" because "defendant has no incentive to bargain for lower fees."  *Barbosa*, 2014 WL 5099423, at *9.

Here, the parties' Settlement Agreement limits plaintiffs' counsel to seeking $577,500 in attorneys' fees, or 33% of the Gross Settlement Fund, and an estimated $13,154.33 in expenses and costs.  (ECF 86-1 ¶ 3.1.)  In conjunction with Florece's motion for conditional certification and preliminary settlement approval, she also filed an unopposed motion seeking approval of these fees, expenses, and costs.  (ECF 87.)  But because Florece has not shown that the Settlement Agreement is fair and equitable, any such request is premature.  *Elston*, 2020 WL 2473542, at *3 n.2; *Hoffman*, 2016 WL 2848919, at *4.  Florece may file a renewed motion when she reapplies for approval of an amended settlement agreement.

### 2.    MMWL Settlement Approval

The court turns now to settlement approval under Rule 23.  A court may approve the settlement of a certified class action only upon finding that it is "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).  To make this finding, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.* In addition, the court must analyze the Tenth Circuit's *Rutter* factors, which are similar. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (noting that the *Rutter* factors largely overlap with the factors set forth in Rule 23(e)(2)).

The approval process proceeds in two steps. In the initial step, "the court's primary objective is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2020). The court must direct notice if the parties can show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). The standard for preliminary approval is less stringent than that applied in the second and final step, and courts will generally grant preliminary approval "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also Flerlage*, 2020 WL 4673155, at *5 ("The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." (quotation omitted)).

If preliminary settlement approval is warranted, the court then "directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 492. At the hearing, the parties formally seek the court's approval of the settlement, and any class members objecting to the settlement are generally given an opportunity to present those objections. *See Pliego*, 313 F.R.D. at 128; NEWBERG ON CLASS ACTIONS § 13:42. The court considers the *Rutter* factors in depth at the fairness hearing to determine whether to grant final approval to the settlement. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. at 502; *see also* NEWBERG ON CLASS ACTIONS § 13:10 ("[T]aking account of all of the information learned during [the preliminary approval] process, the court decides whether to give 'final approval' to the settlement.").

Florece's motion does not specifically address whether the court would "likely be able to" approve the proposed settlement under Rule 23(e)(2). After reviewing the factors set forth in Rule 23(e)(2), the court concludes that Florece has not made the showing required for preliminarily settlement approval. In particular, as discussed above, Florece has not provided enough information for the court to evaluate whether the Settlement Agreement provides adequate compensation to the class members. Because the court cannot fully evaluate that compensation, the court cannot evaluate whether the proposed Settlement Agreement provides adequate relief to class members. The court therefore declines to preliminarily approve the Settlement Agreement. *See Elston*, 2020 WL 2473542, at *7 (declining to approve a KWPA settlement where the plaintiff did not adequately explain the basis for her damage calculations, and the court could not determine whether the proposed settlement amount was "fair, reasonable and adequate").

C.       **Notices and Claim Forms**

Florece asks the court to allow the parties to send their proposed Notices and Claim Forms to the class and collective members.  Because the FLSA requires potential collective members to opt in, they must "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The court "has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary."  *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 2137282, at *4 (D. Kan. May 16, 2019); *see also Hoffmann-La Roche*, 493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.").

Where a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).  In plain, easily understood language, the notice must clearly and concisely state:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* In addition, in the settlement context, Rule 23(e) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]" after granting preliminary approval. FED. R. CIV. P. 23(e)(1)(B). Courts commonly direct "notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a certain date whether to opt out." FED. R. CIV. P. 23(c)(2) advisory committee's note to the 2018 amendment.

The Due Process Clause "also guarantees unnamed class members the right to notice of certification or settlement." *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. CONST. amend. V; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). Actual notice to each class member is not required to satisfy due process. *See id.* at 944. Rather, the court must give "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Id.* (quotation omitted). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Id.*

Here, class members have not yet received any notice of this action or the proposed settlement. The court must therefore direct that they receive notice that complies with both Rules 23(c)(2)(B) and 23(e)(1)—*i.e.*, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Where class members are identifiable, individual notice "is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'" *Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) (quoting *Eisen*, 417 U.S. at 176).

Because the court has declined to approve the Settlement Agreement, approving the parties' proposed Notices and Claim Forms would be premature at this time. *Christeson*, 2019 WL 2137282, at *4. However, the court has identified at least the following areas of concern in the proposed Notices and Claim Forms:

- The proposed Notices state that the lawsuit alleges servers "were required to work off the clock and were not provided adequate notice of how wages were to be paid to tipped employees under the law," and that these practices allegedly denied servers minimum wages and overtime. (ECF 86-1, at 33, 36.) This explanation does not fully and accurately explain Florece's claims in this lawsuit.

- The proposed Notices state that "[t]he class is made up of an estimated 1,998 servers employed by Defendants at its Missouri and Kansas restaurants." (*Id.* at 33, 37.) But the court has certified an FLSA collective and a separate MMWL class, and each group spans a specific time period. The statement in the proposed Notices is therefore also inaccurate.

- The proposed Notices do not provide an estimate for what the Claims Administrator's costs and expenses will be, nor do they explain that those costs and expenses will be paid out of Gross Settlement Fund.

- The proposed Notices should clarify that collective and class members who chose to opt out and collective members who do nothing will be free to pursue their claims on an individual basis subject to the applicable statute of limitations. *See Foster v. Robert Brogden's Olathe Buick GMC, Inc.*, No. 17-2095-DDC-JPO, 2019 WL 1002046, at *8 (D. Kan. Feb. 28, 2019).

- The proposed Notice does not inform class members of their right to enter an appearance in the lawsuit through an attorney if desired, as required by Rule 23(c)(2)(b)(iv).

- The proposed Claim Form for MMWL class members states that they are "consent[ing] to join the action under the Fair Labor Standards Act." (ECF 86-1, at 38.) This is not accurate because the court is certifying the MMWL class as a Rule 23 class action, not an FLSA collective action.

These issues should be corrected in advance of filing a renewed motion for preliminary settlement approval.

### III.    CONCLUSION

For the reasons discussed above, the court conditionally certifies the FLSA collective action and certifies the MMWL class action but cannot preliminarily approve the Settlement Agreement at this time.  The parties may address the issues in the Settlement Agreement and attached proposed Notices and Claim Forms that the court has identified above and file a renewed unopposed or joint motion seeking the court's approval.

**IT IS THEREFORE ORDERED** that plaintiff Kira Florece's Unopposed Motion for Conditional Class Certification and Preliminary Approval of Stipulation of Settlement Agreement and Release (ECF 85) is granted in part and denied in part without prejudice.

**IT IS FURTHER ORDERED** that plaintiff Kira Florece is appointed as representative of the MMWL class, and Brendan J. Donelon of Donelon, P.C. and Brandon Boulware and Erin Lawrence of Boulware Law are appointed as joint class counsel.

**IT IS FURTHER ORDERED** that plaintiff Kira Florece's Unopposed Motion for Approval of Attorney's Fees, Costs and Service Award (ECF 87) is denied without prejudice as premature.

**IT IS SO ORDERED.**

Dated August 17, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge