**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

KIRA FLORECE, on behalf of herself and others
similarly situated,

        Plaintiff,

v.                                  Case No. 20-2339-ADM

JOSE PEPPER'S RESTAURANTS, LLC, et al.,

        Defendants.

## MEMORANDUM AND ORDER NUNC PRO TUNC

Plaintiff Kira Florece ("Florece"), on behalf of herself and others similarly situated, asserts that defendants Jose Pepper's Restaurants, LLC ("Jose Pepper's") and Edward J. Geiselman ("Geiselman") violated the Fair Labor Standards Act ("FLSA") and Missouri Minimum Wage Law ("MMWL").  After the parties reached a settlement, the court conditionally certified the FLSA collective action and certified the MMWL class action.  *See Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-ADM, 2021 WL 3634683 (D. Kan. Aug. 17, 2021).  However, the court declined to preliminarily approve the parties' Stipulation of Settlement Agreement and Release because the information before the court regarding the parties' plan to allocate damages to class and collective members was insufficient, and several provisions in the agreement required revision.  The parties have now addressed the court's previous concerns, and this matter is before the court on Florece's Unopposed Motion for Preliminary Approval of Amended Stipulation of Settlement Agreement and Release.  (ECF 90.)  For the reasons discussed below, Florece's motion is granted.  The court preliminarily approves the parties' Amended Stipulation of Settlement Agreement and Release ("Amended Agreement").  The court further directs that the parties provide notice to the class and collective members in accordance with this order, and sets a fairness hearing for January 2022.

## I.      BACKGROUND

Jose Pepper's owns and operates nine restaurants in Kansas, and Gieselman owns and operates four Jose Pepper's restaurants in Missouri.  Florece worked as a server at the Jose Pepper's restaurant in Belton, Missouri, from April 2019 through February 2020.  She filed this lawsuit as a putative collective and class action in July 2020, alleging that she and other servers who work at the thirteen Jose Pepper's locations were not properly paid minimum wage and overtime compensation as required by the FLSA and, as to Missouri employees, the MMWL.  Specifically, Florece's complaint alleges that she and similarly situated employees were: (1) required to be present and working before they clocked in but they were prohibited from clocking in until they began serving customers; (2) allowed to work overtime if they did not clock in; (3) denied overtime compensation after defendants removed reported overtime hours from the timekeeping system; and (4) asked to report overtime hours worked as regular hours worked under another employee's name.  (ECF 1 ¶ 18.)  Florece's amended complaint further alleges that defendants (5) asked servers to work off the clock during the COVID-19 pandemic solely for tips, inappropriately pooled and shared those tips with non-tipped employees, and had servers spending more than 20% of their time during workweeks performing non-tipped tasks; and (6) failed to inform servers of the FLSA's tip credit provisions.  (ECF 58 ¶¶ 18, 22.)  Defendants deny Florece's allegations.

The court bifurcated discovery into two phases, beginning with discovery relating to conditional certification of the FLSA collective action.  (ECF 15.)  In this first phase, the parties exchanged initial disclosures and written discovery.  Defendants produced personnel-related records, payroll records, timekeeping data, and policies and procedures related to timekeeping, compensation, and training.  (ECF 86, at 4.)  The parties also had a dispute over the scope of pre-

certification discovery, with the court ultimately ordering defendants to produce the names, contact, and employment information for servers and lead managers.  *See Florece v. Jose Pepper's Rests., LLC*, No. 20-2339-TC-ADM, 2021 WL 351413 (D. Kan. Feb. 2, 2021).  Florece then interviewed witnesses, and both sides produced witness declarations.  (ECF 86, at 4.)  Florece engaged a statistical and pay data expert, Liesl Fox, Ph.D., to prepare a report regarding alleged damages; defendants responded and provided their own analysis.  (*Id.*)  Defendants also deposed Florece.  (*Id.* at 3.)

The parties mediated the case and reached a settlement before Florece filed any motions to certify a collective or class action.  On June 21, 2021, Florece filed an unopposed motion seeking (1) conditional certification of an FLSA collective action; (2) certification of a Rule 23 class action for settlement purposes; and (3) preliminary approval of the parties' settlement agreement, including the parties' proposed notices to class and collective members, objection process, and claim process.  (ECF 85.)  The court granted Florece's motion in part and conditionally certified an FLSA collective action, preliminarily certified a settlement-only Rule 23 class, appointed Florece as class representative, and appointed Florece's attorneys as joint class counsel.  *See Florece*, 2021 WL 3634683, at *6-*7.  But the court declined to preliminarily approve the parties' settlement agreement.  The court found that the parties had not provided enough information for the court to fully evaluate the plan to allocate damages to class and collective members; explained that certain provisions in the settlement agreement needed to be revised; and identified areas of concern in the parties' proposed Notices and Claim Forms.  *See id.* at *9-*14.

Florece now seeks preliminary approval of the parties' Amended Agreement.  (ECF 90.)  She also asks the court to approve issuance of the parties' revised Notices and Claim Forms, and to set a final fairness hearing more than 60 days out.  Defendants do not oppose Florece's motion.

## II.   ANALYSIS

The parties' Amended Agreement requires defendants to pay no more than $1,750,000 to resolve the MMWL class action and FLSA collective action (the "Gross Settlement Fund").  (ECF 91-1 ¶ 1.14.)   Out of the Gross Settlement Fund, defendants will pay court-approved attorneys' fees, expenses, and costs; costs and expenses incurred for the services provided by Simpluris, Inc., the third-party settlement administrator (the "Claims Administrator"); and Florece's service award, resulting in a Net Settlement Fund from which the MMWL class members' and FLSA collective members' claims will be paid.  (*Id.* ¶¶ 1.16, 3.1-.2, 4.1-.2.)  The Settlement Agreement limits plaintiffs' counsel to seeking $577,500 in attorneys' fees (33% of the Gross Settlement Fund) and an estimated $13,154.33 in expenses and costs.  (*Id.* ¶ 3.1.)  Florece will seek a service award of $2,000.  (*Id.* ¶ 4.2.)  The Claims Administrator's anticipated costs and expenses will be $21,500.  (*See* ECF 86, at 10; ECF 91-1, at 32, 36.)

After these deductions, the Net Settlement Fund will consist of approximately $1,135,845 to divide amongst class and collective members who return a Claim and Release Form.  (*See* ECF 91, at 3; ECF 91-1, at 34, 38.)  Florece's expert witness Dr. Fox analyzed payroll data for class and collective members and calculated as follows:

- minimum and overtime wages owed for off-the-clock work by applying an average time—30 minutes—for each shift worked during the relevant time period;

- minimum wages owed if defendants were not able to apply a tip credit; and

- minimum and overtime wages owed as a result of formula errors in defendants' payroll system.

(ECF 91-1 ¶ 4.1.)  The parties have agreed to a Plan of Allocation by which the amount paid to each class and collective member under the Settlement Agreement will be a prorated portion of the Net Settlement Fund based on Dr. Fox's calculations of the minimum and overtime wages

owed to each.  (*Id.* ¶¶ 1.21, 4.1.)  Prior to proration, Dr. Fox will apply a 1.3 multiplier to the amounts owed to class members to reflect the greater recovery possible under the MMWL because of its three-year statute of limitations and treble damages provision, *see* MO. REV. STAT. § 290.527.[1]  (*Id.* ¶ 4.1.)  Under the Plan of Allocation, the average payment to class and collective members will be $568.49, and no payment will be less than $50.  (*Id.*)  Settlement funds revert to defendants if class and collective members fail to negotiate settlement checks within 120 days of their mailing.  (*Id.* ¶ 6.5.)

For the reasons discussed below, the court preliminarily approves the Amended Agreement.

### A.    Preliminary Settlement Approval

Court approval is required to settle both Rule 23 class actions and FLSA claims.  *See Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 127-28 (D. Colo. 2016) (discussing approval of a settlement agreement in a hybrid FLSA collective and Rule 23 class action); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982) (stating that, to settle private FLSA actions, the parties must present their proposed agreement to the court, which may then enter a stipulated judgment after scrutinizing the agreement for fairness); FED. R. CIV. P. 23(e) ("The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled . . . only with the court's approval.").  The court first examines whether settlement approval is warranted under the FLSA, and then turns to approval under Rule 23.

---

[1] The FLSA has a default two-year statute of limitations, unless a plaintiff can prove the defendant's conduct was willful, and only allows for double damages.  *See* 29 U.S.C. §§ 216, 255.

### 1.  FLSA Settlement Approval

To approve an FLSA settlement, the court must determine that "(1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties, and (3) the proposed settlement contains an award of reasonable attorney's fees." *Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 2473542, at *3 (D. Kan. May 13, 2020). The court must also evaluate whether any proposed service award to the named plaintiff is reasonable. *Id.* Although the FLSA does not require a fairness hearing like for a Rule 23 class action settlement, "this court routinely holds fairness hearings for FLSA settlements unless the parties notify the court that the opt-in plaintiffs had notice of the settlement and an opportunity to object." *Lundine v. Gates Corp.*, No. 18-1235-JPO, 2021 WL 2228504, at *1 (D. Kan. May 11, 2021).

### a.  Bona Fide Dispute

The court previously concluded that this litigation involves a bona fide dispute. *See Florece*, 2021 WL 3634683, at *8-*9.

### b.  Fair and Equitable

"[A]n FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Pliego*, 313 F.R.D. at 130. To determine whether a proposed FLSA settlement is fair and equitable, courts examine the factors applicable in the Rule 23(e) settlement approval context, as articulated in *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002). *Elston*, 2020 WL 2473542, at *4. The court must also examine additional considerations in light of the FLSA's history and policy, including "whether the proposed agreement contains overly-broad releases or restrictive confidentiality provisions, or fails to provide recourse to opt-in members who object to the proposed settlement." *Id.* As

discussed in further detail below, the court now finds that the parties' Amended Agreement is fair and equitable.

### i.     The Allocation Plan

The court previously declined to approve the settlement agreement because Florece had not provided enough information for the court to evaluate whether the collective members would receive adequate compensation. *See Florece*, 2021 WL 3634683, at *9.  In the current motion, Florece provides a detailed description and table of the different damage scenarios calculated by her expert, Dr. Fox.  (ECF 91, at 3-7; ECF 91-2, at 1.)  Those calculations include damages for regular and overtime hours worked off the clock, assuming servers were required to perform 30 minutes of work before or after shifts without compensation, in the scenario where defendants could claim a tip credit and the scenario where they could not.  Florece now explains that the 30-minute estimate is a conservative number based on her and other servers' experiences.  (*See* ECF 91, at 3 n.3.)  Dr. Fox also calculated damages based solely on hours reported in defendants' timekeeping system, including for the scenario where defendants could not claim a tip credit and for unpaid regular and overtime hours due to errors in the timekeeping system.  The compensation that class and collective members will ultimately receive is equivalent to 86% of the "best case scenario" damages calculated by Dr. Fox for off-the-clock work and unpaid wages attributable to timekeeping system errors—the claims Florece's counsel considers to be the strongest.  (*See id.* at 9-10; ECF 91-2, at 2.)  After carefully reviewing the information provided by Florece and her expert, the court concludes that the collective members will receive compensation under the Amended Agreement that is fair and equitable.

### ii.     Revised Provisions

The court also previously declined to approve the parties' settlement agreement because of an overbroad release provision and an impermissible confidentiality provision. *See Florece*, 2021 WL 3634683, at *10-*11.  The parties' Amended Agreement has now revised those provisions so as to alleviate the court's concerns. (*See* ECF 91, at 10; ECF 91-1 ¶¶ 7.2, 1.24, 21.1.)

### iii.     Service Award

The court also declined to approve the proposed $2,000 service award to Florece because she had not provided sufficient information for the court to evaluate whether that amount was fair and reasonable. *See Florece*, 2021 WL 3634683, at *11.  Florece has now clarified that she spent approximately 36 hours working on this case. (ECF 91, at 11; ECF 91-3.)  Those hours included attending her deposition, and phone calls, meetings, and preparing for her deposition with her attorneys. (ECF 91-3 ¶ 1.)  Florece also reviewed documents, communicated with witnesses, and prepared for her deposition on her own. (*Id.* ¶ 2.)  Florece's attorneys state that she provided them with necessary evidence and shared her knowledge about the workplace, and that she also educated them on defendants' documents, policies, and procedures. (ECF 88, at 18.)  Her attorneys further state that her assistance enabled them to direct "discovery efforts and, in turn, obtain the best settlement result possible for all class members." (*Id.*)

The court's previous order noted that courts in this District have consistently awarded $20 per hour worked on a case to named plaintiffs as service or incentive awards. *See Florece*, 2021 WL 3634683, at *11.  In the current motion, Florece strenuously contends that the $20 per hour standard is not binding on this court, is not always followed in the District, is outdated, and does not adequately compensate a named plaintiff for the risks and consequences that can result from being publicly involved with a lawsuit against an employer on behalf of a class. (ECF 91, at 10-

14.)   The court finds that Florece's arguments have merit but declines to adopt any particular formula to evaluate whether a service award is fair and reasonable.  After reviewing the cases Florece cites and evaluating the work she did and the time she spent on this case, the settlement amount she helped secure, and the potentially severe consequences she may face as the named plaintiff, the court finds the $2,000 service award is fair and reasonable.

### iv.     *Rutter* Factors

The court did not previously analyze the *Rutter* factors in depth, given the threshold flaws in the settlement agreement that the parties have since rectified.  *See Florece*, 2021 WL 3634683, at *9.  The court now examines whether the Amended Agreement is fair and equitable under those factors, which are: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact exist that place the litigation's ultimate outcome in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the parties' judgment that the settlement is fair and reasonable.  *Rutter*, 314 F.3d at 1188; *see also Elston*, 2020 WL 2473542, at *4 (listing the *Rutter* factors).

The *Rutter* factors weigh in favor of preliminarily approving the Amended Agreement. The settlement was the product of fair and honest negotiations.  The parties participated in a day-long mediation with John Phillips, an experienced mediator, on April 6, 2021.  (ECF 86, at 5, 19.) Although they did not reach a settlement that day, they continued to work with the mediator and reached a tentative agreement on May 21.  By that time, the parties had spent approximately eight months in discovery and, as Florece stated in her prior motion, had engaged in "significant and time-consuming data analysis, thorough factual investigation, extensive legal analysis, and discussions among counsel regarding the proper settlement structure and process, the damage

formulas, legal positions, and financial data analysis of Defendants' assets and ability to pay." (*Id.* at 19.)  Further, there is no evidence of collusion between the parties; indeed, counsel has vigorously advocated for their respective clients' positions, and the court intervened in the parties' discovery disputes twice.  (*See* ECF 29, 56.)  This factor favors preliminary approval.  *See Tripp v. Rabin*, No. 14-2646-DDC-GEB, 2016 WL 3615572, at *3 (D. Kan. July 6, 2016) ("The contested nature of th[e] suit, the engagement of a neutral mediator, and the extensive negotiation process constitute evidence that the parties negotiated the settlement agreement fairly and honestly.").

The court also concludes that serious questions of law and fact exist here such that this lawsuit's outcome remains in doubt.  The court has not yet addressed the merits of Florece's claims.  Defendants deny that they violated any wage-related law and deny that class members are owed any unpaid compensation.  (ECF 86, at 3, 20-21.)  Florece points out that some information produced in discovery supports defendants' defenses, including payroll data showing instances where class members recorded and received overtime pay as well as evidence that at least some restaurant locations' wage and hour posters may have complied with tip credit notice requirements.  (*Id.* at 20-21; ECF 91, at 9.)  In addition, defendants could raise arguments as to whether Geiselman is an "employer" under the FLSA and whether some managers enforced the alleged off-the-clock policy at all or in the same way as other managers.  (ECF 91, at 8-9.)  This factor also weighs in favor of approval.

As to the third factor, the value of an immediate recovery to the class members outweighs the potential for future relief following protracted and expensive litigation.  Florece points out that continuing litigation would require conducting additional discovery; seeking Rule 23 certification; briefing possible decertification, dispositive, and *Daubert* motions; and going through trial and

possible appeals.  Further, Florece states that "Defendants' financial situation is dire" because of the COVID-19 pandemic (ECF 86, at 23), and any judgment in favor of plaintiffs at trial greater than the parties' settlement amount could lead to defendants filing for bankruptcy (ECF 91, at 7-8).  In contrast, as noted above, class and collective members receive 86% of the "best case scenario" damages through the parties' settlement for their strongest claims.  (*See id.* at 9-10; ECF 91-2, at 2.))  Courts have approved settlements where plaintiffs recover a smaller percentage of claimed damages.  *See, e.g.*, *Solkoff v. Penn. State Univ.*, 435 F. Supp. 3d 646, 657 (E.D. Pa. 2020) (recognizing that courts in that district had approved FLSA settlements that were approximately 70% of the claimed damages); *Khan v. Dunwoodie Gas Station, Inc.*, No. 19-CV-5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020) (stating that, in an FLSA case, "securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate").  The court finds this factor weighs in favor of preliminary approval.

Finally, Florece states that she has reviewed the terms of the Settlement Agreement and agrees it is a fair resolution.  (ECF 86, at 24-25.)  While Florece does not present defendants' views, they have agreed to the settlement and do not oppose the current motion.  Further, the parties are represented by qualified and experienced counsel who "believe[] the settlement is fair, reasonable and adequate."  (*Id.* at 24.)  The fourth and final factor also favors settlement approval.

*     *     *

In sum, the court finds that the Amended Agreement is fair and equitable in light of the history and policy of the FLSA and under the *Rutter* factors.

### c.    Attorneys' Fees and Costs

A settlement agreement resolving FLSA claims must include an award of reasonable attorneys' fees and the costs of the action.  *See* 29 U.S.C. § 216(b); *Flerlage*, 2020 WL 4673155,

11

at *11.  The court has "discretion to determine the amount and reasonableness of the fee, [but] the FLSA fee award nevertheless is mandatory."  *Flerlage*, 2020 WL 4673155, at *11.  Here, the parties' Amended Agreement limits plaintiffs' counsel to seeking $577,500 in attorneys' fees, or 33% of the Gross Settlement Fund, and an estimated $13,154.33 in expenses and costs.  (ECF 91-1 ¶ 3.1.)  The Claims Administrator's anticipated costs and expenses will be $21,500.  (*See* ECF 86, at 10; ECF 91-1, at 32, 36.)  Defendants have agreed not to oppose Florece's motion for approval of attorneys' fees, expenses, and costs.  (ECF 91-1 ¶ 3.1.)  Consequently, the court "skeptically examine[s] and analyze[s] the fee and cost proposal" because "defendant has no incentive to bargain for lower fees."  *Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2014 WL 5099423, at *9 (D. Kan. Oct. 10, 2014).

### i.   Attorney's Fees

Where a settlement involves a common fund, "courts have applied one of two methods in determining reasonable attorneys' fee awards: a percentage of the fund or lodestar method." *Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 WL 2058762, at *3 (D. Kan. July 14, 2009).  The Tenth Circuit "applies a hybrid approach, which combines the percentage fee method with the specific factors traditionally used to calculate the lodestar."  *Flerlage*, 2020 WL 4673155, at *11.  This method requires the court to "calculate a lodestar amount, which represents the number of hours reasonably expended multiplied by a reasonable hourly rate."  *Id.* (quotation omitted).  The court must further consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), specifically:

> (1) time and labor required; (2) novelty and difficulty of the questions presented in the case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved and

> results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Elston v. Horizon Glob. Ams., Inc.*, No. 19-2070-KHV, 2020 WL 6318660, at *6 (D. Kan. Oct. 28, 2020).  Where a percentage of the fund results in a fee award that would be unreasonable under the lodestar approach, the court has discretion to reduce the award.  *See Barbosa v. Nat'l Beef Packing Co.*, No. 12-2311-KHV, 2015 WL 4920292, at *7 (D. Kan. Aug. 18, 2015).

Florece contends that the 33% of the Gross Settlement Fund that her counsel seeks as a fee award falls within the range consistently approved in this District.  (ECF 88, at 5 (collecting cases).[2])  The court agrees.  In common fund cases, "attorneys' fees of one-third or thereabouts are generally deemed reasonable."  *Elston*, 2020 WL 6318660, at *7 (quotation omitted).

The lodestar approach in conjunction with the *Johnson* factors also support the reasonableness of the attorneys' fees sought:

### (1) *Time and Labor Required; Lodestar Calculation*

Florece's prior motion for fee approval stated that attorney Brendan J. Donelon had spent 192.1 hours working on this case, attorney Brandon Boulware spent 77.3 hours, attorney Erin Lawrence spent 115.5 hours, and paralegal Kim Donnelly spent 40.5 hours, for a total of 425.4 hours.  (ECF 88, at 7-8 n.3.)  That time was spent investigating the facts; interviewing opt-in plaintiffs and witnesses regarding their work experiences; gathering declarations; conducting discovery of and analyzing pay and time records for all class members; litigating and briefing

---

[2] Along with her prior motion seeking preliminary settlement approval, Florece filed an unopposed motion asking the court to approve the settlement agreement provisions concerning attorneys' fees and costs.  (ECF 88.)  The court denied this motion without prejudice as premature because Florece had not established that the settlement was fair and equitable.  *Florece*, 2021 WL 3634683, at *11.  Florece did not file a renewed motion regarding fees and costs with the current motion, so the court considers the information and argument provided previously.

discovery disputes; conducting Florece's deposition, reviewing defendants' voluminous document production; retaining and working with an expert witness to determine class damages; creating a damages model and performing damages calculations for all opt-in plaintiffs; participating in mediation and subsequent negotiations; drafting and responding to written discovery requests; and drafting the Settlement Agreement and related motions and briefs. (*Id.*)  The court finds that these tasks were required in the litigation and justify the time recorded.

Donelon and Boulware's hourly rate is $575, and Lawrence's is $475. (*Id.* at 7.)  Florece submitted a declaration from a Kansas City-area attorney with extensive wage and hour experience to support the claimed rates. (*See* ECF 88-1.)  In that attorney's experience, Donelon's hourly rate "is commensurate with those charged by hourly attorneys of similar experience and success handling complex litigation on both a local and national basis." (*Id.* ¶ 11.)  The attorneys' rates are also comparable to rates previously approved in FLSA cases in this District for attorneys with similar experience levels. *See, e.g.*, *Hoffman v. Poulsen Pizza LLC*, No. 15-2640-DDC-KGG, 2017 WL 25386, at *7 (D. Kan. Jan. 3, 2017) (approving hourly rates of $600, $450, and $400 in an FLSA case); *Bruner*, 2009 WL 2058762, at *10 (awarding an hourly rate of $590.91 in an FLSA case).  The court finds that class counsel's rates are reasonable, particularly in view of the nature of the case and counsel's experience, discussed in further detail below.

Paralegal Donnelly's hourly rate is $200.  Florece provides no information as to Donnelly's experience or the prevailing market rate for similar paralegals in the Kansas City area.  In a recent civil rights case, Judge Crabtree observed that "[r]ecent rulings by our court and the Western District of Missouri will not support a rate of $200 an hour for . . . paralegals." *M.B. v. Howard*, --- F.Supp.3d ----, 2021 WL 3681084, at *14 (D. Kan. Aug. 19, 2021) (finding $150 per hour is reasonable for paralegals).  In the wage and hour context, courts have generally approved hourly

rates of $150 or less for paralegals.  *See, e.g.*, *McMillian v. BP Serv., LLC*, No. 19-2665-DDC-TJJ, 2020 WL 4015259, at *2 (D. Kan. July 16, 2020) (approving $150); *Hoffman*, 2017 WL 25386, at *7 (approving $130, $110, and $100).  Nevertheless, the court will rely on the $200 rate for the time being considering that the percentage of the fund class counsel is seeking is generally deemed reasonable and most of the *Johnson* factors discussed below favor approving the requested fee.

Applying the reported rates to the hours recorded results in a lodestar of $217,867.50.  The $577,500 fee sought by counsel represents a 2.65 multiplier on the lodestar amount.  Courts in this District have generally approved smaller multipliers.  *See, e.g.*, *Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 WL 3743098, at *8 (D. Kan. July 13, 2016) (approving a 1.3 multiplier and collecting cases).  But, since Florece originally provided information about her counsel's hours worked in this case, Florece's counsel has spent additional time revising the settlement agreement according to the court's prior order and submitting the current motion. Counsel will also spend additional time preparing for and participating in the fairness hearing, working with the Claims Administrator, and answering questions from class and collective members.  (*See* ECF 88, at 7.)  By the time Florece seeks final settlement approval, the multiplier will have decreased.  Further, other courts in the Tenth Circuit have consistently approved greater multipliers.  *See, e.g.*, *Rothe v. Battelle Mem'l Inst.*, No. 18-cv-03179-RBJ, 2021 WL 2588873, at *11 (D. Colo. June 24, 2021) (approving a 3.61 multiplier); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6).  Ultimately, the court preliminarily concludes that the first factor and lodestar calculation favor approving the requested fee.

*(2) Novelty and Difficulty of Questions Presented*

As to the second *Johnson* factor, Florece contends that "FLSA collective actions are both procedurally and substantively complex." (ECF 88, at 11.) She notes hurdles to establishing liability and damages for off-the-clock claims, including showing that a common off-the-clock policy was enforced at all Jose Pepper's locations and determining time worked off the clock when there is no data recorded. Florece also notes the difficulties in pursuing a tip-credit claim. The court is familiar with the challenges inherent in these questions and others presented in this case and finds that this factor weighs in favor of the fee requested.

*(3) Skill Requisite to Perform the Legal Service Properly; (9) Experience, Reputation and Ability of the Attorneys*

Florece reports that Donelon has 26 years of experience as an attorney, Boulware has 19 years, and Lawrence has 11 years. (*See* ECF 88-2; ECF 88-3.) Florece has submitted information showing that each has substantial experience in FLSA and class action litigation, have obtained millions of dollars on behalf of clients, and have a positive reputation in the community. (*See id.*; ECF 88, at 12, 15-16.) These factors favor approving the requested fee.

*(4) Preclusion of Other Employment*

Florece represents that her counsel can only "pursue a handful of [wage and hour] matters at any given time" due to "the time, resources, and funding necessary to litigate." (ECF 88, at 13.) The two firms representing Florece employ only approximately five attorneys combined. Given the size of these firms and the time Florece's attorneys have spent working on this matter, the court agrees that litigating this case has precluded at least some other employment. This factor weighs in favor of approving the requested fee.

*(5) Customary Fee; (12) Awards in Similar Cases*

Florece states that her counsel customarily charges a 30-40% contingency fee and that she "entered into a fee agreement calling for a 33% contingency" in this case.  (*Id.*)  As discussed above, 33% of a common settlement fund is a typical fee award and is consistently approved in this District.  *See, e.g.*, *Barbosa*, 2015 WL 4920292, at *11 (approving a fee equating to 33% of the settlement fund and noting that was "within the customary fee range which counsel appears to charge in similar matters").  These factors also favor approving the requested fee.

*(6) Whether the Fee is Fixed or Contingent; (10) Undesirability of the Case*

Florece's counsel agreed to represent her on a contingency basis, allowing Florece and the class and collective members access to the courts that might not be available otherwise.  In agreeing to a contingency arrangement, Florece's counsel risked investing their time and money and recovering nothing.  Florece's counsel notes that they did not find the case undesirable, but many other attorneys might because of the risks involved.  The court concludes that these factors favor approving the requested fee.

*(7) Time Limitations Imposed; (11) Nature and Length of Professional Relationship*

Florece does not report any unusual time limits imposed by her or the circumstances, thus the seventh *Johnson* factor is neutral.  As for Florece's professional relationship with counsel, they state that Florece was "excellent . . . to work with." (ECF 88, at 16.)  Courts have recognized that the meaning of the factor relating to the professional relationship "and its effect on the calculation of a reasonable fee has always been unclear."  *Hoffman*, 2017 WL 25386, at *9 (quotation omitted).  This eleventh *Johnson* factor is also neutral.

*(8) Amount Involved and Results Obtained*

Florece contends that her counsel obtained an excellent result in this case, particularly in view of the current state of the restaurant industry and the uncertainty that defendants could pay anything in the future. The court agrees. Servers who participate in this litigation will receive a *pro rata* share of the common fund based on the hours each worked off the clock and unpaid wages owed that are attributable to timekeeping system errors. On average, servers will receive compensation equivalent to "more than 50 hours of overtime pay" (*see* ECF 88, at 14), while avoiding the uncertainties of continuing litigation and proceeding to trial. This factor favors approval of the requested fee.

\*       \*       \*

In sum, the court preliminarily concludes that the Amended Agreement contains a reasonable attorneys' fee award.

### ii.  Costs

Florece has submitted itemized lists of the expenses and costs she seeks to recover, totaling $13,154.33. (*See* ECF 88-4.) The court has carefully reviewed this information and finds the expenses and costs incurred reasonable. Further, the Claims Administrator's anticipated costs and expenses—$21,500—also appear reasonable. *See Rothe*, 2021 WL 2588873, at \*3, \*13 (approving $14,682 in settlement administration fees incurred by Simpluris, Inc., where the class consisted of less than 300 people).

### d.  The court grants preliminary approval (FLSA claims).

For the reasons discussed above, Florece has now demonstrated that (1) this litigation involves a bona fide dispute, (2) the proposed Amended Agreement is fair and equitable to all parties, and (3) the proposed Amended Agreement contains an award of reasonable attorney's fees,

expenses and costs.  The court therefore grants preliminary approval of the Amended Agreement as to the FLSA claims in this case.

### 2.       MMWL Settlement Approval

The court turns now to settlement approval under Rule 23.  A court may approve the settlement of a certified class action only upon finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  Rule 23(e)(2) sets forth factors for the court to consider in making this finding.  In addition, the court must analyze the Tenth Circuit's *Rutter* factors, which are similar. *See Chavez Rodriguez v. Hermes Landscaping, Inc.*, No. 17-2142-JWB-KGG, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020) (noting that the *Rutter* factors largely overlap with the factors set forth in Rule 23(e)(2)).

The approval process proceeds in two steps.  In the initial step, "the court's primary objective is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."  WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2020).  The court must direct notice if the parties can show "that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  FED. R. CIV. P. 23(e)(1)(B).  The standard for preliminary approval is less stringent than that applied in the second and final step, and courts will generally grant preliminary approval "where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. 488, 492 (D. Kan. 2012); *see also Flerlage*, 2020 WL 4673155, at *5 ("The general rule is that a court

will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval." (quotation omitted)).

If preliminary settlement approval is warranted, the court then "directs notice to class members and sets a hearing at which it will make a final determination on the fairness of the class settlement." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. at 492. At the hearing, the parties formally seek the court's approval of the settlement, and any class members objecting to the settlement are generally given an opportunity to present those objections. *See Pliego*, 313 F.R.D. at 128; NEWBERG ON CLASS ACTIONS § 13:42. The court considers the *Rutter* factors in depth at the fairness hearing to determine whether to grant final approval to the settlement. *In re Motor Fuel Temperature Sales Pracs. Litig.*, 286 F.R.D. at 502; *see also* NEWBERG ON CLASS ACTIONS § 13:10 ("[T]aking account of all of the information learned during [the preliminary approval] process, the court decides whether to give 'final approval' to the settlement.").

### a.   *Rutter* Factors

The court looks first to the *Rutter* factors, considered above in the FLSA context. For the same reasons discussed above, the court finds that the *Rutter* factors favor preliminary settlement approval in the MMWL context.

### b.   Rule 23(e)(2) Factors

The court looks next to Rule 23(e)(2). To make a finding that a settlement is "fair, reasonable, and adequate," the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). Florece's current and prior motions do not specifically address whether the court would "likely be able to" approve the proposed settlement under Rule 23(e)(2). Nevertheless, the court has reviewed the 23(e)(2) factors—which mostly overlap with the *Rutter* factors analyzed in greater detail above—and determines that preliminary settlement approval is warranted.

The court previously concluded that Florece and joint class counsel have adequately represented the class. *See Florece*, 2021 WL 3634683, at *4, *6. And, as discussed in more detail above, the Amended Agreement is the product of fair and honest negotiations conducted at arms-length, and it provides fair and equitable relief to the class and collective members. While Florece receives a service award under the Amended Agreement and other class members do not, such an award is permissible because of her role in the litigation. *See Chavez Rodriguez*, 2020 WL 3288059, at *4. The court also analyzed the relief provided to the class as compared to the risks of proceeding in litigation above, along with the proposed attorneys' fee award. Consequently, the court focuses here on the parties' proposed method of distributing relief to the class.

Pursuant to the Amended Agreement, the Claims Administrator will mail Notices and Claim Forms to class members' last-known addresses and follow up with a mailed reminder 20

days later if necessary.  (ECF 91-1 ¶ 5.1.)  Class members may return a Claim Form via mail (in a provided, postage prepaid envelope), via facsimile, or via email within 45 days.  (*Id.* ¶¶ 1.4, 6.1.) Within 30 days of the court issuing an order granting final approval of the Amended Agreement, the Claims Administrator will issue checks to the participating class members.  (*Id.* ¶¶ 1.20, 6.4.) Class members then have 120 days from the date of mailing to negotiate the checks.  (*Id.* ¶ 6.4.) Settlement funds revert to defendants if participating class members fail to negotiate their checks. (*Id.*)  The court is satisfied that this method of processing claims and distributing relief is adequate, and the court does not have concerns regarding the timing of payments to class members as compared to the payment of attorneys' fees to joint class counsel.

### c.    The court grants preliminary approval (MMWL claims).

For the reasons discussed above, Florece has now preliminarily demonstrated that the proposed Amended Agreement is fair, reasonable, and adequate under the *Rutter* and Rule 23(e)(2) factors.  The court therefore grants preliminary approval of the Amended Agreement as to the MMWL claims in this case.

### B.    Notices and Claim Forms

Now that the court has preliminarily approved the parties' Amended Agreement, the court examines the parties' proposed Notices and Claim Forms.  Because the FLSA requires potential collective members to opt in, they must "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  The court "has the power and duty to ensure that the notice is fair and accurate, but it should not alter plaintiff's proposed notice unless such alteration is necessary." *Christeson v. Amazon.com.ksdc, LLC*, No. 18-2043-KHV, 2019 WL 2137282, at *4 (D. Kan. May 16, 2019); *see also Hoffmann-La Roche*,

493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.").

And where a class is certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).  In plain, easily understood language, the notice must clearly and concisely state:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*  In addition, in the settlement context, Rule 23(e) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]" after granting preliminary approval.  FED. R. CIV. P. 23(e)(1)(B).  Courts commonly direct "notice to the class simultaneously under both Rule 23(e)(1) and Rule 23(c)(2)(B), including a provision for class members to decide by a certain date whether to opt out."  FED. R. CIV. P. 23(c)(2) advisory committee's note to the 2018 amendment.

The Due Process Clause "also guarantees unnamed class members the right to notice of certification or settlement."  *DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005) (citing U.S. CONST. amend. V; *Mullane v. Cent. Hanover Bank &*

*Trust Co.*, 339 U.S. 306, 313 (1950); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). Actual notice to each class member is not required to satisfy due process. *See id.* at 944. Rather, the court must give "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Id.* (quotation omitted). "The legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar." *Id.*

Here, class members have not yet received any notice of this action or the proposed settlement. The court must therefore direct that they receive notice that complies with both Rules 23(c)(2)(B) and 23(e)(1)—*i.e.*, "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Where class members are identifiable, individual notice "is not a discretionary consideration that can be waived in a particular case; rather, it is 'an unambiguous requirement of Rule 23.'" *Better v. YRC Worldwide, Inc.*, No. 11-2072-KHV, 2015 WL 566962, at *3 (D. Kan. Feb. 11, 2015) (quoting *Eisen*, 417 U.S. at 176).

"The court must approve the content, form, and manner of notice proposed by the parties." *Flerlage*, 2020 WL 4673155, at *7. The court's prior order identified areas of concern for the parties to address in the Notices and Claim Forms. *See Florece*, 2021 WL 3634683, at *14. The parties have now revised the proposed Notices and Claim Forms to eliminate those issues (*see* ECF 91-1, at 31-38), and the court finds that they now provide class members with the information required by Rule 23(c)(2)(B). Further, as discussed above, notice will be mailed to class and collective members after defendants provide the Claims Administrator with last-known addresses. Those addresses are in defendants' possession, as all class and collective members are current or former employees. "Individual mailed notice, when combined with contact information for

plaintiffs' counsel, affords the 'best notice that is practicable under the circumstances.'" *Flerlage*, 2020 WL 4673155, at *7 (quoting FED. R. CIV. P. 23(c)(2)(B)). Once class and collective members receive their Notices and Claim Forms, they have 45 days to evaluate their options and determine their preferred course of action. This time period is sufficient. *See DeJulius*, 429 F.3d at 945-47 (affirming method where the majority of class members were given less than 32 days to respond to proposed class settlement). The parties' revised Notices and Claim Forms are approved, and the court directs the parties to provide them to class and collective members in the manner the parties propose.

## III. CONCLUSION

The court previously granted conditional certification of the following settlement-only FLSA collective:

> All persons who worked as hourly nonexempt servers at Defendants' nine restaurant locations in the state of Kansas from May 21, 2018, through May 21, 2021.

And the following settlement-only MMWL class:

> All persons who worked as hourly nonexempt servers at Defendants' four restaurant locations in the state of Missouri from July 7, 2017, through May 21, 2021.

The court further appointed Florece as class representative, and her attorneys Brendan J. Donelon of Donelon, P.C. and Brandon Boulware and Erin Lawrence of Boulware Law as joint class counsel. *Florece*, 2021 WL 3634683, at *6.

Now, for the reasons discussed above, the court preliminarily approves the Amended Agreement. The court further approves Simpluris, Inc. as the third-party claims administrator. The parties are directed to send the approved Notices and Claim Forms to the class and collective members (attached as Exhibits A and B, respectively) in the manner proposed within **14 days** of the date of this order. The court schedules a fairness hearing for **January 5, 2022 at 10:00 a.m.**

**in Courtroom 440 of the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, Kansas 66101**.  During this hearing, the court will consider: (a) whether the proposed Amended Agreement should be finally approved as fair, reasonable, and adequate as to the class and collective members; and (b) class counsel's application for attorneys' fees, expenses and service award for Florece. Class and collective members will have the opportunity to address the fairness of the Amended Agreement and raise objections at the fairness hearing.

**IT IS THEREFORE ORDERED** that plaintiff Kira Florece's Unopposed Motion for Preliminary Approval of Amended Stipulation of Settlement Agreement and Release (ECF 90) is granted.

**IT IS SO ORDERED.**

Dated October 29, 2021, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge